85  190
122  549

# JOHN H. FRANCIS

*v.*

## PETER KERKER.

1. SALE—*by agent to his own firm.* Where one sells corn of a certain grade, with an agreement, if it is not of that grade, the purchaser may sell the same on the market for the best price he can get, and account for the proceeds, if the purchaser sells the same, he will be the agent for the original seller, and is not authorized to sell the same to a firm of which he is a member, and if he does, he will be treated as the purchaser, with a right to

deduct the difference in value between the corn delivered and the contract price, provided the original seller does not affirm such sale.

2. AGENT—*ratification of sale to his firm.* If an agent sells to his own firm, the principal has an election to adopt the act, and if he deliberately and freely ratifies the act of the agent, or acquiesces in it for a great length of time, it will become obligatory on him, not by its own intrinsic force, but because he waives the protection given him by the law.

3. Where an agent sold corn of his principal to his own firm, and gave the principal a statement thereof, and no objection was made for two years, and the parties had a settlement of accounts, in which no allusion was made to the transaction, it was *held,* that the principal thereby ratified the sale so made by the agent.

APPEAL from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

Messrs. HUGHES & McCART, for the appellant.

Messrs. WILLIAMS, BURR & CAPEN, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was assumpsit, by appellee, against appellant, for a lot of corn sold and delivered by the former to the latter.

Appellee testified that he contracted to deliver to appellant about 5000 bushels of corn, at El Paso, at thirty-two cents per bushel; that there was nothing said about the quality of the corn, only that appellant remarked that it did not make any difference what kind of corn it was, for he was going to put it in the distillery, and that he told him what kinds of corn he had—"white, yellow and all kinds."

The contract was made about the 28th of May, 1873, and there is no controversy but that appellant received some 5173 bushels of appellee's corn, at Peoria, in June of that year.

Appellant, however, and his brother, Willis Francis, both testified that the corn was to be delivered in Peoria, instead of El Paso, and that the price to be paid there was thirty-six cents per bushel, and that appellee represented the corn to be "high mixed corn."

Appellant further testified that "high mixed corn" is good, sound corn, two-thirds yellow and the balance mixed; that he

told appellee that he would not buy the corn without grading —that it must be of the grade "high mixed corn," and if it was not, he (appellant) would sell it on the market, and to this appellee assented. None of the corn, when received, inspected as "high mixed," but it was classified by the inspector as "no grade," "rejected," and "unsound." Appellant's partner, Zell, as he testifies, sold the corn on the market for the highest market price, and appellant made out a statement of sales, which he forwarded to appellee, together with the proceeds of the corn, after deducting the freight, and $640 which it had been previously agreed he should retain out of the same on an old debt for rent. Appellee made no objection to the statement of sales as returned to him, although he testifies that he saw appellant shortly subsequent to its receipt, and never has intimated, so far as the evidence shows, dissatisfaction with the sales, until the commencement of this suit. This circumstance strongly corroborates the testimony of appellant, and the preponderance of the evidence is decidedly in favor of his right to sell the corn on the market because of its not being of the grade he purchased. In that view, however, he became the agent, for the purpose of making the sale, of appellee, and he could not, either personally or as a member of a firm, become a purchaser at his own sale, so as to bind appellee. It is, therefore, insisted that he is to be treated as having received the corn, notwithstanding its defective condition, under the contract, and that he is bound to account for it at the price he agreed to pay, less the difference between the price of corn of the grade he contracted for and the grade of that he received, at that time and place.

This would undoubtedly be the correct rule, had appellee promptly repudiated the sale on being notified of it; but appellee had an election to adopt the act of appellant in selling to the firm of which he was a member, or not, and, as is said by Story, in his work on Agency, section 210, if, in such case, the principal "deliberately and freely ratifies the act of the agent, or acquiesces in it for a great length of time, it will become obligatory upon him, not by its own intrinsic force,

but from the consideration that he thereby waives the protection intended by the law for his own interests, and deals with his agent as a person, *quoad hoc*, discharged of his agency."

Here, something over two years elapsed from the return of the sales until the bringing of the suit, during which, as before observed, there was no manifestation of an intention to treat them as invalid, and hold appellant upon the principle now contended for. Appellee, on the trial, without denying possession of the returns of sales, declined, on notice to that effect, to produce them, and he gave no evidence as to their contents or of his ignorance that they informed him that appellant was interested in the purchase. Appellant testifies that he made and returned him a statement of sales, which appellee concedes, and the reasonable implication is, that it showed the purchasers' names, from which appellee was advised that appellant was a purchaser. It is also in evidence that, in the fall of 1873, appellant sold his lands whereof appellee had been his tenant, and then called upon appellee for a settlement of accounts between them. The settlement was made, to the satisfaction of both parties, and resulted in a balance of $638 in favor of appellant. The present claim was in no way alluded to. This, we regard as a very conclusive circumstance showing that the return of sales, as made, of the corn, was satisfactory to appellee, and that he then had no design to repudiate the sales made to the firm of which appellant was a member.

We think, on the evidence in this record, the conduct of appellee, in connection with the delay to bring forward his claim, show that he ratified the sales to appellant's firm, and that the judgment below was, therefore, unauthorized.

The judgment is reversed and the cause remanded.

*Judgment reversed.*