SAMUEL C. WILEY

*v.*

JAMES STEWART.

*Filed at Ottawa November 11, 1887.*

| 122 545 |
| 34a 173 |
| 122 .545 |
| 108a ¹151 |

1. RESCISSION OF CONTRACT—*of a contract made by a mutual agent.* Where a contract is effected through the instrumentality of one who sustains the relation of agent to both the contracting parties, it may, as a general rule, be avoided, at the election of one or both of the parties. Such a contract is not void, but only voidable.

2. SAME—*placing parties in statu quo.* If a party has received anything under a contract which is voidable, he must restore it, if practicable, before he will be permitted to repudiate the agreement.

3. A and B composed a banking firm, and A, B and C composed another firm engaged in business, which was indebted to the bank. A, as a member of the bank firm, loaned $800 of a depositor's money to the firm of A, B and C, without the knowledge or consent of the depositor, or that of any of his partners. A credited the firm account of A, B and C with the amount, and charged the account of the depositor with the sum so loaned, and executed a note, in the name of the firm of A, B and C, to the depositor, for the same, which he left in a bundle of the depositor's papers. In an action on the note brought by the payee, to whose hands it had come, B denied its execution by verified plea, but no return was made of the depositor's money, which was used in paying the firm debt of A, B and C: *Held*, that B was estopped from repudiating the contract and avoiding the note while taking the benefit of the depositor's money in paying his firm's debts.

4. PARTNERSHIP—*liability for torts of partners.* A partnership firm is liable to others for the tortious acts as well as the contracts of its members within the scope of the partnership.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of La Salle county; the Hon. CHARLES BLANCHARD, Judge, presiding.

In the year 1884, William Wilson, Osman J. Wilson and Samuel C. Wiley were partners in business, under the firm name and style of O. J. Wilson & Co., engaged in blacksmithing and repairing, and making buggies, wagons, harrows and gopher cultivators, at Earlville, Illinois, and William Wilson

35—122 ILL.

and Osman J. Wilson were also partners in business, under the firm name of William Wilson & Co., engaged in banking, at the same place, William Wilson being the general financial manager of both firms. Among the depositors at the bank of William Wilson & Co. was the plaintiff, Stewart, who had for several years been in the habit of depositing his money there, and who had authorized William Wilson to loan his money for him whenever there was a good opportunity to do so. Some time in the year in question William Wilson signed a note, in the firm name of O. J. Wilson & Co., for $800, and payable to Stewart, and placed it in the bank safe, among a bundle of papers that were marked as belonging to Stewart. He also entered on the account of Stewart, who had the sum of $984.29 to his credit, a charge of $800, as having been loaned to O. J. Wilson & Co., and upon the account of O. J. Wilson & Co. a credit of $800, as being the proceeds of the Stewart loan. These entries, as well as the note, were dated August 1, 1884, but they appear upon the face of the bank books as having been actually entered at a date long subsequent thereto. The signing of this note, and the making of said entries on the bank books, were wholly unknown either to the plaintiff, Stewart, or to the defendant, Wiley, and there is no evidence that the firm of O. J. Wilson & Co. ever received this $800, excepting the entries above mentioned, made by William Wilson in the bank books, which entries, as before stated, were made without the knowledge of his co-partners, or of Stewart. According to the evidence introduced by the defendant, and the offers of proof made by him, William Wilson had no authority to borrow money or execute promissory notes in the firm name of O. J. Wilson & Co.

On the 19th of December, 1884, the banking firm of William Wilson & Co., being insolvent, made a voluntary assignment, for the benefit of its creditors, to Charles M. Smith, as assignee, and on the 23d day of December, 1884, Samuel C. Wiley filed a bill in chancery in the circuit court of La Salle

county, for the dissolution of the firm of O. J. Wilson & Co. and the appointment of a receiver, and on the same day a receiver was appointed by the court. Up to the time of the assignment of William Wilson & Co., and until about ten days thereafter, Stewart had always supposed his money was on deposit in their banking house, and was wholly unaware of the existence of the note until it was shown him by the assignee. The assignee having, some eight weeks afterwards, delivered the note to him, he brought this suit.

To the declaration, the defendant, Samuel C. Wiley, interposed the plea of the general issue, and a plea denying the execution of the note, properly verified by affidavit. William Wilson having fled to parts unknown, was not served with process, and Osman J. Wilson declining to plead, was defaulted. A trial was had, resulting in a verdict and judgment in favor of plaintiff for $906.66, from which defendant, Wiley, prosecuted an appeal to the Appellate Court for the Second District, which affirmed the judgment. A certificate of importance having been granted, the case is now brought here for review.

Messrs. DUNCAN, O'CONNOR & GILBERT, and Mr. SAMUEL RICHOLSON, for the appellant:

William Wilson could not lawfully act as the agent for both O. J. Wilson & Co. and for Stewart. Ewell's Evans on Agency, 18; *Greenwood* v. *Spring*, 54 Barb. 375; *Claflin* v. *Bank*, 25 N. Y. 293; *Florence* v. *Adams*, 2 Rob. (La.) 556; *Insurance Co.* v. *Insurance Co.* 14 N. Y. 85; *Copeland* v. *Insurance Co.* 6 Pick. 198; Story on Agency, sec. 211.

A delivery of the note was absolutely necessary. *Hint* v. *Weir*, 29 Ill. 84; *Bank* v. *Strong*, 72 id. 560; *Foy* v. *Blackstone*, 31 id. 541.

There is no legitimate proof that the firm of O. J. Wilson & Co. received the benefit of the $800 borrowed of appellee.

548 WILEY *v.* STEWART.

Brief for the Appellee.    Opinion of the Court.

Messrs. BULL, STRAWN & RUGER, for the appellee:

That the delivery of the note was good, see *Williams* v. *Galt*, 95 Ill. 172; *Folley* v. *Van Tuyl*, 9 N. J. L. 153; Daniell on Neg. Inst. sec. 63, pp. 74, 75, 65.

William Wilson was the agent for O. J. Wilson & Co. His loaning to a firm of which he was a member, rendered the contract voidable by Stewart, but not void. Story on Agency, sec. 214; *Greenwood* v. *Spring*, 54 Barb. 375.

William Wilson could not repudiate his own acts if he desired. *Cotton* v. *Holliday*, 59 Ill. 176.

When the partnership is proved, and the giving of the note by one of the partners, the presumption is the note was given in the business of the firm. *Littell* v. *Fitch*, 11 Mich. 524; *Currier* v. *Cameron*, 31 id. 373.

The firm of O. J. Wilson & Co. having received the benefit of the $800, and still retaining such benefit, can not avoid payment of the note by repudiating the act of William Wilson.


Mr. JUSTICE MULKEY delivered the opinion of the Court:

The foregoing statement, which was prepared by appellant's counsel, though not quite as full in some respects as it might be, and perhaps slightly colored in others, is nevertheless substantially correct, and sufficiently accurate for the purposes of what we propose to say on the subject. A reference to a few well recognized principles, it is believed, will afford a solution of whatever difficulties, real or imaginary, that are supposed to be in the case before us.

It is undoubtedly true, as claimed by appellant, that where a contract is effected through the instrumentality of one who sustains the relation of agent to both the contracting parties, it may, as a general rule, be avoided, at the election of one or both of the parties. So far there is no conflict of opinion. But is such a contract absolutely void? The logic of appellant's argument seems to maintain that it is; yet upon prin-

ciples about which there can be no two opinions, it clearly
can not be. If in such case the principals, after notice of the
agent's true relations to the contracting parties, should either
expressly approve the contract, or by a course of conduct treat
it as an existing obligation, it would, by all the authorities,
become obligatory and binding upon them, to the same extent
as if they had originally made it in person. This, of itself,
on the universal principle that what is void can not be rati-
fied, demonstrates that such a contract is voidable, only. The
case of *Francis* v. *Kerker*, 85 Ill. 190, is an authority directly
in point, wherein such a contract was held to have been rati-
fied by the conduct of the complaining party after notice.

There is also another principle applicable to cases of this
kind, where, as in the present instance, the contract has been
partly executed, which is not only sustained by the authori-
ties, but is founded alike in reason and in justice. It is, that
if a party has received anything under such a contract he
must restore it, if practicable, before he will be permitted to
repudiate the agreement. *Harding* v. *Parshall*, 56 Ill. 219;
*Buchenau* v. *Horney*, 12 id. 336; *Staley* v. *Murphy*, 47 id. 241.

In this case, the money for which the note in question was
given was appropriated, whether rightfully or wrongfully, by
O. J. Wilson & Co. in the payment of their indebtedness to
the bank, and although this was done some six months or more
before the commencement of the suit on the note, the appel-
lant does not seem to have interposed any objection to it or
made any complaint about it. The answer to this is, that he
did not, personally, know anything about it. That does not
at all, in our opinion, alter the case. He clearly had con-
structive notice of the state of the firm's account with the bank,
including the $800 received from appellee, and appellant is
therefore to be held to the same degree of responsibility as if
he had had personal knowledge of the transaction. There
might be special circumstances which would require a change
of the rule, as, where the managing partner of a firm has con-

spired with third parties to perpetrate a fraud upon the other members, who have no personal knowledge of the partnership affairs. But nothing of that kind is pretended here.

If, as appellant seems to claim, the action of Wilson in executing the note to appellee, and appropriating the $800 to the payment of the firm's indebtedness to the bank, was absolutely void as a contract, what, then, was the legal effect of the transaction? Viewed in that light, it was clearly the simple case of one member of a firm taking the money of a third party and appropriating it to the firm's use,—or, more shortly, it was a tortious conversion by the firm of appellee's money, for which appellant was equally liable with Wilson, on the familiar principle that the firm is liable for the torts as well as the contracts of its members within the scope of the partnership. And in this view of the case the amount thus taken might well have been recovered, under the declaration in this case, as money had and received to the use of the plaintiff. In that view, however, the finding of the jury is perhaps a trifle too large. We do not adopt this theory of the case, however, but have presented it merely to show how little merit there is in the defence, upon appellant's own theory of it.

In view of the fact that appellant has had the full benefit of the money for which the note was given,—at least his firm has, which, in law, amounts to the same thing,—the defence, to say the least of it, strikes one, at first blush, as being decidedly novel. If appellee were trying to collect the money sued for, from the bank, notwithstanding the loan to O. J. Wilson & Co., on the ground that Wilson could not bind appellee while acting for his own firm, there would be much force in the defence. But the present case is wholly unlike the one suggested. Here appellee, who is the only sufferer, takes no exception to Wilson's authority to make the loan to the latter's own firm. On the contrary, he has fully ratified it by bringing suit on the note. But the defendant, whose firm has enjoyed the benefits of the loan, says, by way of defence: "It is

true, we got the money and paid our debt to the bank with it, but as Wilson had no right to borrow of appellee on the firm's account, because in effecting the loan he acted as the agent of appellee, the loan itself is therefore illegal and void." The law certainly does not sanction such a defence, and we so hold. The appellant not having restored what the firm received under the contract, but having enjoyed the full benefit of the loan, he is estopped from questioning its validity.

We have not thought it necessary to take up and consider separately the points made in appellant's brief. The views here presented are believed to sufficiently answer the substance of the defence, as we understand it, and for a more specific treatment of the questions discussed we refer the parties and counsel to the opinion of the Appellate Court, which has our approval.

The judgment of that court will be affirmed.

*Judgment affirmed.*