# Estate of Andrew E. Smythe, Deceased, et al., v. Charles H. Evans.

1. PRINCIPAL AND AGENT—*A Contract Effected Through an Agent of Both Contracting Parties is Voidable Only.*—Where a contract is effected through the instrumentality of one who sustains the relation of agent to both the contracting parties, it is merely voidable if repudiated before its execution, and not absolutely void.

2. INSTRUCTIONS—*Not Justified by the Evidence, Erroneous.*—An instruction to the jury that if they found that a party received as profits under the contract in question some certain, definite and fixed amount, etc., is erroneous where there is no uncertainty in the evidence as to the amount of profits received.

3. PARTNERSHIP—*Agreement to Pay a Party One-Half of the Profits Arising from a Single Venture as Compensation Does Not Constitute.*—An agreement between two parties to pay one-half of the profits arising from a single venture as compensation for services rendered, does not constitute a partnership.

4. EVIDENCE—*Refreshing Witness' Memory by Referring to a Written Statement Made from His Books.*—Testimony of a witness based upon his recollection, refreshed by referring to a written statement made from the books of his company which were in evidence, is properly admitted.

**Claim in Probate.**—Appeal from the Circuit Court of Cook County; the Hon. CHARLES G. NEELY, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed May 28, 1903.

John T. Richards, attorney for the estate of Andrew E. Smythe.

Jesse A. & Henry R. Baldwin, attorneys for Margaretta M. Smith, appellants.

Kretzinger, Gallagher & Rooney, attorneys for appellee.

A contract fully performed by all the parties thereto can not be tried or assailed upon the ground of public policy.   Central Trust Co. v. Ohio Central R. R. Co., 23 Am. & Eng. R. R. Cases, 666; Manchester R. R. Co. v. Concord R. R. Co., 66 N. H. 100; Brooks v. Martin, 2 Wall. 70.

The rule of law is well settled that in case of double employment and double service rendered thereunder, with knowledge of both parties in interest, and both acquiescing therein, no objection can be made thereto upon the ground of public policy.   Nolte v. Hulbert, 37 Ohio St. 448; Pugsley v. Murray, 4 E. D. Smith (N. Y.) 246; Tewksbury v. Spruance, 75 Ill. 188; Shaw v. Andrews, 9 Calif. 73; Alexander v. Northwestern Christian University, 57 Ind. 466; DeSteiger v. Hollington, 17 Mo. App. 382; Fitzsimmons v. Southern Ex. Co., 40 Ga. 336.

Mr. Justice Windes delivered the opinion of the court.

Appellee, who was administrator of the estate of Andrew E. Smythe, deceased, filed a claim against the estate in the Probate Court of Cook County for $125,200.    John T. Richards was appointed by the court to defend the estate against the claim.    A hearing was had before the Probate Court which resulted in an order of that court disallowing the claim.    Evans appealed to the Circuit Court, where another hearing before the court and a jury was had upon the evidence of the witnesses heard on the trial before the Probate Court, which was read to the court and jury, and upon other evidence, oral and documentary, adduced.    The jury rendered a verdict in favor of the claimant of $82,760.97, on which judgment was rendered, from which this appeal is taken by the estate and the sole heir thereof, Margaretta M. Smith.

Estate of Andrew E. Smythe v. Evans.

At the close of the evidence on behalf of the claimant, and again at the close of all the evidence, counsel for the estate and the heir moved the court to direct a verdict in favor of the estate, which motions were respectively overruled and exceptions preserved. The principal contention in the case is that the court erred in overruling these motions, for the reason, as it is claimed, Evans seeks to recover against said estate by reason of an alleged contract made between him and said Andrew E. Smythe in his lifetime, which contract, it is said, is void because contrary to public policy.

It appears from the evidence that said Andrew E. Smythe, on or about March 14, 1895, entered into a contract with the Universal Gas Co., a corporation of Illinois, of the first part, and himself of the second part, by which he undertook to build, construct and equip a gas plant for the gas company upon its property in Chicago, the plant to consist of different items specified in the contract and shown by the plans and specifications then on file in the company's office, prepared by said Evans. The contract provides, among other things, that Smythe should expend not less than $100,000 upon the plant before July 1, 1895, and that it should be completed and ready for use on or before March 5, 1897, and has the following further provisions, to wit:

"Said plant to be built and constructed under the supervision of C. H. Evans, engineer, and in case of his death, removal or disability, then under such other engineer as may be designated by said party of the first part; which said engineer shall pass upon the sufficiency of the work done under said contract. The workmanship and material to be first-class in all respects, and the work to be done to the satisfaction and acceptance of the engineer in charge; and in consideration of the construction of said plant by said party of the second part, in compliance with the terms and provisions hereinbefore specified, the said party of the first part agrees to pay therefor, to the said party of the second part, the sum of $1,177,000, as follows: Payment shall be made from time to time to said party of the second part upon the certificate of the engineer in charge of said work to the amount of eighty-five per cent of the value of

the work and materials used and expended upon the prem-- ises of said party of the first part by said party of the second part, in the construction of the said plant, the said certificate as to the value of the work so done to be based upon its relative value as compared with the entire plant to be constructed under this contract, at the contract price above specified; and the remaining fifteen per cent reserved to be paid upon the completion of the entire plant in accord- ance with the terms and provisions of this contract and delivery thereof to said party of the first part, free from all liens thereon, said final payment, as well as all other payments, to be made upon the certificate of the engineer in charge of said work."

It also appears from the minute book of the gas company, showing a record of a meeting of its board of directors, that it was moved by one of the directors and seconded by another, that Mr. Evans be appointed as superintendent of the company, subject to the by-laws of the company, and the secretary was requested to notify him of these terms. There is no evidence in the record that we have been able to find which shows that this motion was carried or that the secretary ever notified Evans of any action of the direc- tors of the gas company in this regard; nor is there any evi- dence, except that of one witness, that Evans acted as the engineer of the gas company during the construction of its gas plant, or as its superintendent. This witness, Dawson, testified on cross-examination as follows:

"Mr. Evans was engineer of the Universal Gas Com- pany when I was there. He was in the employ of the company."

It appears from the other evidence of the witness that he went to work for the gas company about the end of May, 1896, and remained working for the company about ten or eleven months; but he states no facts nor circumstances as a basis for his conclusions that Evans was the engineer of the gas company or was in its employ. There is abundant evidence that Evans, during the whole of the progress of the construction of the gas plant, was employed by and worked for said Smythe or the Continental Contract Com- pany, a corporation which appears to have been organized

Estate of Andrew E. Smythe v. Evans.

for the purpose of carrying out Smythe's contract to construct this gas plant, so far as any actual business it did is shown by the evidence. Any other finding than that Evans was employed by Smythe and not by the gas company, would, in our opinion, be clearly and manifestly against the evidence. The evidence of Dawson in this regard is but the statement of a conclusion, and the fact that Evans was designated by the contract as engineer, and that it provides he should pass upon the sufficiency of the work under the contract, is, we think, clearly overcome by the positive evidence that he was employed by Smythe, and the absence of all evidence, beyond the mere statement of Dawson referred to, that Evans acted for the gas company or was ever paid anything by it.

It appears from the evidence, and is nowhere contradicted, that Smythe and Evans made an agreement under which Evans was to act for Smythe as engineer and superintendent in the construction of the plant of the gas company which Smythe had undertaken to build under the contract between the company and Smythe. Smythe caused to be organized a corporation, The Continental Contract Co., through Dell Smith, Robert S. Miller and Harry Flyton, who subscribed for all of the stock thereof, $100,000; Smith for one share, Miller for one share and Flyton for 998 shares. The par value of each share was $100. The company was completely organized June 26, 1895, and Smythe thereafter acquired the stock of Miller and Flyton, except one share retained by Flyton, who was the bookkeeper and employe of Smythe, as well as of the contract company after its organization. Smythe thereafter acquired the stock of Dell Smith and transferred one-half the total stock of the corporation to one C. H. Randle, who remained the owner of one-half such stock up to the completion of the contract between the gas company and Smythe. Smythe's contract with the gas company was, some time after he commenced operations under it, transferred to the Continental Contract Co., and the latter company completed the gas plant on or about June or July 1, 1897. Smythe con-

ducted all the financial affairs of the contract company in and about the construction of the gas plant, received all payments made by the gas company and made all disbursements of money in connection therewith, except some small amounts aggregating about $1,000 which were made by the company after Smythe's death, which occurred in the summer of 1897.

By agreement between Smythe and Evans the latter was to be paid by the former for his services as engineer and in the supervision of the work of constructing the gas plant, one-half of whatever profits said Smythe might derive from his contract with the gas company. The stock of the contract company being owned equally by Smythe and Randle, the latter, as is shown by the evidence, was to receive one-half the profits derived by the contract company, thus leaving the remaining one-half of such profits to Smythe, who, as stated above, was to give one-half his share to Evans.

Learned counsel argue at length, citing numerous authorities to support the claim, that the contract between Smythe and Evans was void as against public policy, because Evans undertook, as they claim, to work for Smythe at the same time that he was engineer and superintendent for the gas company, which knew nothing of the contract between Smythe and Evans. If we are right as to the facts of the case, viz., that Evans was employed by and worked for Smythe, and not for the gas company, the contention of counsel would be immaterial in this case.

If, however, it be conceded that Evans was in fact the engineer and superintendent of the gas company, and at the same time took employment from Smythe in the same capacity to work for him under the same contract, still we are of opinion that although the contention of counsel has support in the authorities cited by them, among others, Rice v. Wood, 113 Mass. 133; Rice v. Davis, 136 Pa. St. 439–43; Bell v. McConnell, 37 Ohio St. 396–400, and cases cited; Findlay v. Pertz, 66 Fed. Rep. 427–34, the weight of authority and the better reason, in our opinion, as well as the

decisions of our Supreme Court, are against the contention. Many of the cases cited by learned counsel, including Crichfield v. Paving Co., 174 Ill. 466–83, are cases in which the contracts under consideration were by their terms *contra bonos mores*. Such cases, in our opinion, have no application to a contract like the one at bar, which has no element that can strictly be said to be against good morals. There is nothing in the evidence tending to show that by the contract in question any public interest would be injured or inconvenienced—on the contrary it shows that only private interests are affected. It appears from the proof quite clearly that Smythe must of necessity have known, if it was a fact, that Evans was the engineer and superintendent of the gas company at the same time that he was working for him, Smythe. With this knowledge Smythe paid Evans $30,000 on account, pursuant to the terms of their contract. If, then, Smythe had knowledge of Evans' alleged relation to the gas company, his contract with Evans was not void, but merely voidable if repudiated before its execution. He could not, under the circumstances shown and above enumerated, avoid the contract, and what was binding upon him is binding upon his estate. Wiley v. Stewart, 122 Ill. 545–8; Warrick v. Smith, 137 Ill. 504; Hafner v. Herron, 165 Ill. 242–8; Pfeuffer v. Maltby, 54 Texas, 454–61; Pickett v. School Dist., 25 Wis. 551; Fitzsimmons v. Southern E. Co., 40 Ga. 336; Shaw v. Andrews, 9 Calif. 73; Warren v. Jones, 51 Me. 146–9.

In the Wiley case, *supra*, the Supreme Court had under consideration a contract effected through an agent for both contracting parties, and said : " It is undoubtedly true, as claimed by appellant, that where a contract is effected through the instrumentality of one who sustains the relation of agent to both the contracting parties, it may, as a general rule, be avoided, at the election of one or both of the parties. So far there is no conflict of opinion. But is such a contract absolutely void ? The logic of appellant's argument seems to maintain that it is, yet upon principles about which there can be no two opinions, it clearly can

not be. If in such case the principals, after notice of the agent's true relations to the contracting parties, should either expressly approve the contract, or by a course of conduct treat it as an existing obligation, it would, by all the authorities, become obligatory and binding upon them, to the same extent as if they had originally made it in person. This, of itself, on the universal principle that what is void can not be ratified, demonstrates that such a contract is voidable only;" and held that the appellant, one of the parties to the contract, having had the full benefit of it, was estopped from denying liability thereon. The case in principle seems directly applicable to the liability claimed here, except that, Smythe being dead, the liability is claimed against his estate. There can be no question, if Smythe was estopped from claiming the invalidity of the contract, the estoppel is equally applicable as to his estate and heir.

In the Pickett case, *supra*, the Supreme Court of Wisconsin had under consideration a similar contract, and held, that where one of the principals with full knowledge of the facts which it is claimed rendered the contract invalid as against public policy, had affirmed the contract, it became binding upon him.

In the Shaw case, *supra*, the Supreme Court of California had under consideration a contract similar to the one here in question, where one of the contractors for the erection of a building acted as superintendent for the owners of the building, and held he could recover for his services as such superintendent, the owners, when they employed him, having full knowledge of the fact that he was one of the contractors. To a like effect in principle are the other authorities cited. Other contentions of appellee's counsel with regard to the binding effect of this contract upon appellants, under the evidence in the case, need not be discussed, inasmuch as what has been said seems conclusive in that regard.

The second instruction given for appellee, and the ninth and tenth instructions asked by appellants and refused, all relate to the question of the binding effect of the agree-

ment between Smythe and Evans, which we have considered. We think there was no error in the giving of the second instruction, which is in accord with our holding, and in the refusal of the ninth and tenth, which are to the contrary. The seventh instruction asked by appellants was, we think, properly refused, because misleading and not justified by the evidence. It in effect tells the jury that unless it found that Smythe did receive as profits under the contract in question some certain, definite and fixed amount, then they should find for the appellants. There is no uncertainty in the evidence, as we construe it, as to the amount of profits received by Smythe. We think the eighth refused instruction was properly refused. It in effect told the jury that if Evans and Smythe were partners in the transaction in question, and if the affairs of such partnership were not settled and a balance ascertained between Evans and Smythe in the lifetime of the latter, that the finding should be in favor of appellants. There was no sufficient evidence on which to base the instruction.

There was evidence, it is true, tending to show that Smythe and Evans were equally interested in the profits of the gas company contract, but that did not make them partners within the meaning of the instruction. We think the evidence fails to show that they were partners in any such sense as that Evans could not bring an action at law to recover what was due him. Their undertaking was with reference to a single matter, and Evans' compensation, which Smythe agreed to pay, was from the profits. Evans was to have a share of the profits merely as compensation. Burton v. Goodspeed, 69 Ill. 237; Wann v. Kelly, 5 Fed. Rep. 584; Smith v. Bodine, 74 N. Y. 30-3; 1 Bates on Partp., Sec. 43; Parsons on Partp., Sec. 100 (3d Ed.).

For appellants it is also claimed that the verdict is contrary to the evidence and is not sustained thereby. The contract between Smythe and the gas company, as is clearly shown by the evidence, was fully completed, and the profits arising therefrom are shown to have been $451,043.90, all of which was received by Smythe in his lifetime. It is

true that after the organization of the contract company and the assignment of the gas company contract to it, Smythe acted for the contract company, received all the money due under the contract and made all disbursements on account thereof, but that does not relieve him from the payment of one-half the profits of the contract, to which he became entitled by virtue of his ownership of one-half the stock of the contract company. Moreover, Smythe being in control of all financial matters of the contract company, and in receipt of all moneys from the gas company under the contract, which the evidence shows to have been paid in full, it is a reasonable inference that he received all that he was entitled to have from the profits of the contract. After allowing credit for $30,000, paid by Smythe in his lifetime to Evans, the balance remaining due is the exact amount of the jury's verdict. A contention is made in this regard that the accounts owing by the contract company were not all paid, and that its cash book shows only the amount of $270,843.80 unaccounted for, which it is claimed were the profits on the gas company contract; that when this amount is divided between Randle and Smythe, the stockholders, it would make Evans' claim at the utmost approximately $37,500. We think this contention can not be maintained. The evidence is that all the unpaid accounts of the company were taken into consideration in the estimation of the profits and the cash book alone can not be considered, but all the books of the company which were offered in evidence. The book-keeper of the company, who kept all its accounts under the supervision and direction of Smythe, testified in substance, refreshing his recollection from a statement which he made from the books, that the profits from the construction contract were $451,043.90. This evidence is not disputed, and we can not undertake to make a statement or go into an examination in detail of all the items in the company's books to demonstrate therefrom the correctness of this testimony, which we think is a sufficient basis for the jury's verdict.

A further claim is made that the court admitted improper evidence on behalf of the claimant, and refused competent evidence on behalf of the appellants. The alleged incompetent evidence is that of the bookkeeper above referred to, based upon his recollection, refreshed by referring to a written statement made from the books of the company, which were in evidence. Counsel do not argue the point nor cite any authority in support of their contention. We think the evidence was proper as an aid to the court and jury to reach a correct result as to the profits of the contract company as shown by its books in evidence. The witness had a right to refresh his recollection from the statement. Bonnet v. Glattfeldt, 120 Ill. 166–173.

The evidence which it is claimed the court improperly refused to admit was an inventory and statement of account made by Evans to the Probate Court of Cook County as administrator of the estate of said Smythe, and two orders of said Probate Court entered in said estate under dates of October 12 and December 22, 1897, respectively. The claim is that Evans did not inventory or account for any funds received from the contract company, and that the orders of the Probate Court show that he paid the heir large amounts, when his own claim was sufficient to render the estate insolvent. The only possible relevancy of this evidence would be an inference that he thereby admitted he did not have a claim against the estate. We think no such inference could reasonably be drawn, that these documents did not tend to show a defense to the claim, and that they were properly excluded.

We are of the opinion that the record presents no error which would justify a reversal of the judgment, and it is therefore affirmed.