## Katharine B. Hotchkiss et al. v. The Norwood Park Building, Loan & Homestead Association.

### Gen. No. 13,165.

1. Master—*when findings of, will not be disturbed.* The findings of a master will not be set aside on review unless clearly and manifestly against the weight of the evidence.

2. HOMESTEAD LOAN ASSOCIATION—*when secretary of, may act as agent of member in bidding for loan.* The secretary of an association may act as the agent of a member of the society in bidding for a loan, where he acts openly and with the knowledge of the directors.

3. HOMESTEAD LOAN ASSOCIATION—*status of loan made by, until fully paid.* A loan made by an association to one of its members is deemed to remain wholly unpaid until a final settlement or until the shares held by the member have matured.

Bill to foreclose. Appeal from the Circuit Court of Cook County; the Hon. JULIAN W. MACK, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed April 18, 1907. Rehearing denied April 29, 1907.

**Statement by the Court.** Appellee, complainant below, filed a bill against Katharine B. Hotchkiss, individually and as administratrix of the estate of Freelon E. Hotchkiss, deceased, and Elsie Hotchkiss, Gertrude Hotchkiss, and Thomas F. E. Hotchkiss, minors, to foreclose two mortgages executed by Freelon E. Hotchkiss, deceased, and Katharine B. Hotchkiss, his wife. It is averred in the bill that Freelon E. Hotchkiss was a member of the defendant association, and the owner of 10 shares of its 19th series and 40 shares of its 23d series, and borrowed from the defendant $5,000, and he and his wife, Katharine B. Hotchkiss, executed to the complainant a bond in the penal sum of $10,000, to secure payment on the 15th day of each and every month after October 1, 1902, $25 on his shares of stock, $27.17 interest, being at the rate of 7 per cent per annum, and $18.23 as premium, until the principal sum, with interest and premium thereon, should be paid by said shares of stock having attained the value of $100 each. May 17, 1893, Hotchkiss, deceased, was a member of the defendant association, and the owner of 10 shares of the 25th series of the association's stock, and became indebted to it in the sum of $1,000, for money loaned to him by the Association, and to secure the same he and his wife, Katharine B., executed to the complainant a bond in the penal sum of $2,000, conditioned to pay to complainant, on the 15th of each month from April 1, 1903, $5 on said

shares of stock, $5.84 as interest, at the rate of 7 per cent per annum, and $3.65 as premiums on said loan, until the principal sum and interest should be paid, by said shares attaining the value of $100 each.  Each bond provides that in case of the default of payment of any one or more of the installments, complainant may forfeit the stock, apply the proceeds to the loan and foreclose the following mortgages: To secure the payments mentioned in the bonds, respectively, Hotchkiss, deceased, and his wife, executed two mortgages, one of date October 1, 1892, and the other of date May 17, 1903, each conveying the northerly half of lot 774, in block 5, of the 3d division of Riverside, Cook county, Illinois. Hotchkiss made default in the payments mentioned in the bonds, and complainant elected to forfeit the stock and foreclose the mortgages.  The cash value of the stock collateral to the loan of $5,000 was $1,883, and of the stock collateral to the $1,000 loan, $268.  The bill is to foreclose both mortgages.  The minors, Elsie Hotchkiss, Gertrude Hotchkiss and Thomas F. E. Hotchkiss, answered by their guardian *ad litem,* submitting their interest to the court and calling for strict proof, and Katharine B. Hotchkiss, individually and as administratrix, answered, setting up that the loans were made by private agreement between Hotchkiss, deceased, and the complainant, and without reference to any sale or bid for the preference or priority of loans, as between said Hotchkiss and the stockholders of the association, and that the securities are tainted with usury, etc. Replications were filed to the answers, and the cause was referred to a master.  Exceptions to the master's report as to the first or $5,000 loan were sustained, the court holding that the complainant had forfeited all right to interest on that loan.  The master's report as to the loan of $1,000, to secure which the mortgage of May 17, 1903, was executed, was, in all respects, favorable to the complainant, and exceptions to that part of the master's report were overruled, and the master's findings in respect to the $1,000 loan were sustained.  The appeal is from the decree in re-

spect to the $1,000 loan and the mortgage of May 17, 1903, to secure the same.

FREDERICK MAINS and FRANK F. REED, for appellants.

WILLIAM T. UNDERWOOD and ROSCOE L. ROBERTS, for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

Counsel for appellants say, in their argument, that the $5,000 loan is not in issue, but only the $1,000 loan of May 17, 1893. In respect to the latter loan the court, confirming the master's report in regard to it, found that it was made in the manner provided by the statute and by-laws of the association. But counsel for appellants contend that the premium was not determined in open meeting of the board of directors and by offering the money for loan to bidders, as prescribed by section 8 of the act in respect to Homestead Loan Associations, Hurd's Rev. Stat., 1905, p. 521; but that the premium was fixed by private agreement between F. E. Hotchkiss, deceased, and appellee; also, that the transaction is tainted with usury. The burden of proof that the loan was not made in accordance with the statute was with the appellants. Appellants' counsel called as a witness Fred D. Stevers, who testified that he had been secretary of the appellee since October 1, 1892. He produced minutes of the regular monthly meeting of the board of directors held May 16, 1893, which showed that "F. E. Hotchkiss applied for additional loan of $1,000 on lot 774, block 5, 3rd division of Riverside, at a premium of 35 per cent. Motion to accept application carried." Mr. Stevers testified that he had stated to Mr. Hotchkiss that in case he, Hotchkiss, could not be present at the meeting, he should have some one there to bid for him, and that he asked witness to bid for him, as his representative, a premium of 35 per cent, and witness did so, and Hotchkiss not being present the money was struck off to him at that premium. On redirect, the witness testified that he was authorized to bid

as high as 35 per cent, if necessary, and he thought that his first bid was less than 35 per cent. The witness also testified that he made the bid for Hotchkiss orally. Appellants' counsel called other witnesses, whose testimony tended to prove that they obtained loans from the association, without bidding any premium. It would unnecessarily lengthen this opinion to refer, in detail, to the testimony of these witnesses. Their testimony is apparently relied on as tending to prove that the association was in the habit of loaning money without bids, and fixing the amount of the premium privately. None of them testified that the premium on the $1,000 loan to Hotchkiss was not bid by Secretary Stevers for Hotchkiss, as he testified. The master having reported that Stevers bid, as he testified, 35 per cent premium for the $1,000 loan, at a regular meeting of the board of directors, and the court having confirmed said report, we are not at liberty to reverse the finding, unless we are prepared to hold that it is clearly and manifestly against the weight of the evidence (Siegel v. Andrews & Co., 181 Ill., 350), which we do not think it is.

Appellants' counsel contend that the secretary could not legally act as the agent of Hotchkiss in bidding for the loan; but Stevers acted openly, with the knowledge of the directors, and this contention cannot be sustained. Meacham on Agency, section 68; Wiley v. Stewart, 122 Ill., 545.

The argument of appellants' counsel in support of the contention that a greater rate of interest than 8 per cent, as provided by appellee's by-laws, was charged, is that "the association exacted $5.84 per month—$70.08 each year— as interest on $1,000, until the whole principal sum is paid, notwithstanding the regular partial payments of $5 each month in reduction of such principal indebtedness." The fallacy of this argument consists in the assumption that the monthly payments of $5 each are to be credited as payments on the principal indebtedness of $1,000, and, consequently, that indebtedness is reduced $5 each month. The monthly payments of $5 each are not entitled to be credited on the principal indebtedness of $1,000, but on the 10 shares of

stock owned by the deceased in his lifetime, on each of which 50 cents per month was due, or $5 on the 10 shares.

If Hotchkiss, deceased, had not been a borrower, his estate would owe to the association $5 per month on his shares, and the fact that he became a borrower did not transform this indebtedness into interest on the sum borrowed. The fact that he became a shareholder to qualify him as a borrower in no wise affects the question of his liability.

By section 6c of the statute, it is provided: "Any member who shall have obtained a loan or advance on his shares, and who shall have given real estate as security, may, at any time, upon giving thirty days previous notice in writing, repay the same. On settlement, such member *shall be charged the full amount of such loan or advance,* together with any and all arrearages due thereon, or on the shares pledged, or appertaining to the security given, and shall thereupon be allowed, as a credit, the withdrawal value of the shares pledged as security, together with such other credits as may be returnable on account thereof, and the balance shall be received by the association in full settlement and discharge of such loan or advance," etc. We think it clearly appears from this section that monthly payments, other than of interest or premium, are to be credited on the shares, and that the principal indebtedness is to be considered wholly due until a settlement, or until such time as the par value of the shares shall reach $100.

So we understand the Supreme Court to have construed the statute. Holmes v. Smythe, 100 Ill., 413, 421; Freeman v. Ottawa B'g Ass'n, 114 ib., 182.

In Thompson on Building Associations, 2nd ed., p. 368, the author says: "It is generally considered that the payments on the stock are not partial payments on the loan. In fact, the rule is they are not *ipso facto* payments on the loan." See, also, Endlich on Law of Building Associations, 2nd ed., sections 330, 332 and 333. The loan was made in accordance with the statute and the contract of the parties, and the contention that it was usurious cannot be sustained.

Hurd's Rev. Stat. 1905, p. 522, section 11; Home B'g & Loan Ass'n v. McKay, 217 Ill., 551, 557.

The decree will be affirmed.

*Affirmed.*