## FIFER ET AL. *v.* RACHELS ET AL.

[No. 3,887. Filed November 26, 1901.]

DEED.—*Delivery.*—Where a grantor executed a deed, placed it in an envelope on which was indorsed "valuable papers," and deposited it with a bank subject to call or his order, the deed so remaining with the bank until the death of grantor, there was no delivery of the deed sufficient to pass the title of the real estate.

From Posey Circuit Court; *O. M. Welborn,* Judge.

Suit by Clarence L. Fifer and others against Olive J. Rachels and others to quiet title. From a decree for defendants, plaintiffs appeal. *Reversed.*

*L. M. Wade, F. P. Leonard* and *H. Clements,* for appellants.

*D. O. Barker* and *G. V. Menzies,* for appellees.

HENLEY, J.—This was an action by appellants to quiet their titles to certain lands in Posey county, Indiana. Appellee Olive Jane Rachels answered by general denial. She also filed a cross-complaint asking that the title to the land in question be quieted in her. The infant appellees, children of Olive Jane Rachels, filed a like answer and cross-complaint. Appellants replied the general denial. The cause was submitted to the court for trial, which resulted in a finding and judgment in favor of appellees, defendants below. The appellants filed a motion for a new trial, which was overruled, and this action of the trial court is the only error here assigned.

Appellants contend that the judgment of the trial court is not sustained by sufficient evidence, and is contrary to law. The evidence is not conflicting, and discloses the following facts, upon which appellants base their cause of action: Levi Fifer, the grantor named in the deeds in controversy, was, in 1894, a farmer past sixty years of age, owning about 400 acres of land and personal prop-

erty of the value of $2,000 or $3,000.  He had neither wife, children nor grandchildren.  He had lived in Posey county, Indiana, for many years.  He could not read or write.  About two years before his death, which occurred in 1898, he legally adopted Clarence L. Fifer and Louella Tarpley as his heirs at law.  These adopted children both married, and lived away from the home of their father, but on lands owned by him.  During the lifetime of Mrs. Levi Fifer, the appellee Olive Jane Rachels, who was then unmarried, lived with the Fifers as one of the family, and married while living there.  After his wife's death, Levi Fifer caused Mrs. Rachels to move to what was called his "home place," where Fifer and Mrs. Rachels and family continued to live until Fifer's death.  The evidence clearly shows Fifer expressed his intention to give to Mrs. Rachels and children the 160 acres of land for taking care of him, and with this purpose in view employed an attorney in a neighboring town to prepare a deed of conveyance, and who at the time acted as his attorney in preparing his will and other deeds.  The deeds and will were all duly signed and placed in an envelope, which was sealed.  Fifer's attorney then wrote upon the sealed envelope the following:  "This envelope contains valuable papers, the property of Levi Fifer, of Bethel township, Posey county, Indiana, and are a special deposit, subject to call or his order.  Dated October 31, 1894."  The envelope was handed to Fifer, who took the same to the office of the New Harmony Banking Company, and left it there without any other directions whatever in regard to its keeping or delivery than those appearing on the back of the envelope.  The package remained in the bank sealed until the death of Fifer, and was then by the officers of the bank, in such sealed condition, delivered to the person named as executor of Fifer's will.  The various deeds contained in the package were after Fifer's death delivered by the executor of Fifer's will to the persons named as grantees therein.  There was evidence

of Fifer's declaration to the effect that he intended to deed the land to Mrs. Rachels and children, and certain witnesses testified that Fifer had, in conversation with them, pointed out the land in controversy and said he intended that Mrs. Rachels and her boys should have it after his death but "he intended to keep it in such a shape so that he could make a living off of it while he lived and he didn't want it encumbered in any shape or have anything brought against it." Fifer also declared that he would keep the deed, "that he might have occasion to change his mind". The latter declaration is in line with the written directions placed upon the sealed envelope in which the deeds were placed.

In *Vaughan* v. *Godman,* 94 Ind. 191, it is said: "In all disputes as to whether or not a deed has been delivered, the most important inquiry is to ascertain the intent of the grantor in the act, or several acts, which, it may be claimed, constitute a delivery. Did he intend to part with all control over the deed? Did he intend to divest himself of the title and lodge it in the grantee?"

Much evidence was introduced, consisting principally of the grantor's declarations on the subject, to prove the intention of the grantor to give the land to the parties named as grantees in the deed. But such evidence does not establish the delivery of the deed. Evidence of one's intention to give certain lands to certain persons, and evidence of the intent to deliver a deed of conveyance, are widely different. The grantor undoubtedly intended that the grantees named in the deed should have the land, but evidence to establish that intention is of little value as going to establish the intention to deliver a deed of conveyance. As was said by the Supreme Court of Illinois in *Walls* v. *Ritter,* 180 Ill. 616, 54 N. E. 565: "The declarations made by the deceased, as proved, show an intention on his part to give the land to appellant, but they have no bearing on the vital question, did he give it to him by the execution and

delivery of a deed of conveyance, without which no title could pass?" The facts in the case of *Walls* v. *Ritter, supra,* are so similar to the facts in the case at bar as to merit notice. Walls was the grandson of one George W. Sims. Sims deeded eighty acres of land to Walls without any qualification. This deed, together with his will, was by direction of Sims placed in an envelope, sealed, and his name written on the envelope and placed in a box in a bank. Walls had a key to the box at the bank in which the deed rested during Sims' lifetime. After the death of Sims, Walls took possession of the deed made to him. It was also shown by the evidence that during the lifetime of Sims, and after he had made the deed to Walls, he told several persons that he intended to give Walls the land in question, and that he had told others that he *had* given the land to him. These facts, the court says, "wholly fail to prove a delivery of the deed."

The conveyance of title to land has always been surrounded by formalities and hedged in by strictly enforced rules of law, all of which are rendered necessary to prevent fraud and to establish a chain of title to property which from its very nature is indestructible. We think the recent case of *Osborne* v. *Eslinger,* 155 Ind. 351, 80 Am. St. 240, decisive of the question of delivery arising upon the facts in this case. In that case, the court, by Dowling J., says: "Where the claim of title rests upon the delivery of the deed to a third person, the deed must have been properly signed by the grantor, and delivered by him, or by his direction, unconditionally, to a third person for the use of the grantee, to be delivered by such person to the grantee, either presently, or at some future day, or upon some inevitable contingency, the grantor parting, and intending to part, with all dominion and control over it, and absolutely surrendering his possession and authority over the instrument, so that it would be the duty of the custodian

or trustee for the grantee on his behalf, and as his agent and trustee, to refuse to return the deed to the grantor for any purpose, if demand should be made upon him. And there should be evidence beyond such delivery of the intent of the grantor to part with his title, and the control of the deed, and that such delivery is for the use of the grantee. If the deed is placed in the hands of a third person, as the agent, servant, friend, or bailee of the grantor, for safe keeping only, and not for delivery to the grantee; if the fact that the instrument is a deed is not made known to such third person, either at the time it is handed over, or at any time before the death of the grantor; if the name of the grantee, or other description of him, is not given, and if there is no evidence beyond the mere fact of such delivery of the intent of the grantor to part with his control over the instrument and his title to the land, then such transfer of the mere possession of the instrument does not constitute a delivery, and the instrument fails for want of execution." The learned judge deduces the foregoing rule of law after an exhaustive review of the text books and of the American and English cases.

Giving effect to the law so announced, what is the result when applied to the facts in the case at bar? Fifer placed a sealed package in the hands of the New Harmony Banking Company,—at most his bailee; the banking company did not know at the time the package was received what it contained, except as disclosed by the indorsement thereon "valuable papers"; they knew nothing further until after Fifer's death. The package containing the deed was in fact absolutely under the control of Fifer. By the terms of the indorsement thereon, it could be delivered to no one else, except it be by his order. He disclosed nothing to the banking company whatever. If the package had been deposited by Fifer, just as it was deposited, and without any indorsement whatever upon it, it would still have been absolutely within his control and subject to his order, be-

cause nothing was said by Fifer at the time he made the deposit to indicate that any other person than himself had any right to the contents of the package, or that he in any manner intended to relinquish his control over it.

It follows from what we have said that the deeds which were signed and acknowledged by Levi Fifer and placed by him with the New Harmony Banking Company were never delivered to the grantees named therein, and are for that reason void.

Judgment reversed, with instruction to the lower court to sustain appellants' motion for a new trial.

Black, Comstock and Wiley, J. J., concur. Roby and Robinson, J. J., dissent.