# Indiana Trust Company, Executor, *v.* Byram.

[No. 5,142. Filed December 14, 1904. Rehearing denied April 26, 1905. Transfer denied June 23, 1905.]

1. Decedents' Estates.—*Bills and Notes.—Execution.—Delivery. —Burden of Proof.*—The burden of establishing the execution, which includes the delivery, of a note owing from a decedent's estate, rests upon the plaintiff by virtue of §2479 Burns 1901, Acts 1883, p. 151, §11. p. 10.

2. Trial.—*Special Findings.—Bills and Notes.—Execution.—Delivery.—Inferences.—Question for Jury.*—Where the special findings do not in terms show the "delivery" of a note, but do show such facts as that a delivery is an unavoidable inference therefrom, the court will draw such inference as a matter of law, and if different inferences could reasonably be drawn from the facts, it is a question for the jury. p. 10.

3. Principal and Agent.—*Bills and Notes.—Delivery to Agent. —Validity.*—A promissory note, delivered to the agent, is enforceable by the principal, though such principal never had physical possession thereof and did not in fact know of its existence. p. 11.

Indiana Trust Co. *v.* Byram—36 Ind. App. 6.

4. PRINCIPAL AND AGENT.—*Personal Interest of Agent Antag-onistic.*—An agent can not deal with himself so as to bind his principal without such principal's ratification after full knowledge.   p. 11.

5. SAME.—*Personal Interest of Agent Antagonistic.—Profits.*— Where an agent secures profits to himself in the affairs of his agency, such profits, whether the result of the performance or the violation of his duty, inure to his principal.   p. 11.

6. SAME.—*Contracts Between an Agent, as Such, and Himself.*— *Validity.*—A note, executed by an agent personally to his principal in reference to an account between themselves, is voidable at the option of the principal.   p. 11.

7. BILLS AND NOTES.—*Execution.—Delivery.*—Where an agent was entrusted with money to invest, and he invested same at his own discretion, rendering an annual statement of the condition of such funds to his principal, and he signed a note payable to such principal and placed therewith collateral security and locked same in a box with such principal's papers, and such note contained credits, made with such agent's signature, of payments made by such agent, and six or eight weeks before such agent's death, he had such papers brought to his bed and he examined same and had them securely locked in the box with other papers of his principal, a legal delivery to the principal is shown.   *Hatton* v. *Jones*, 78 Ind. 466, distinguished.   Wiley, J., dissenting.   p. 12.

From Marion Circuit Court (7,845); *Henry C. Allen,* Judge.

Action by Sophronia A. Byram against the Indiana Trust Company as executor of the will of Norman S. Byram, deceased.   From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Quincy A. Myers* and *Charles A. Dryer,* for appellant.
*James W. Noel,* for appellee.

ROBY, J.—Appellee filed her claim against the estate of Norman S. Byram, deceased.   The case was tried in the Marion Circuit Court, special finding of facts made, conclusions of law stated thereon, and judgment rendered for the amount of the note which formed the basis of the claim.

The finding of facts is, in effect, as follows:   From 1878 to his death decedent was the agent of the appellee, who

was his cousin, and loaned and reloaned, invested and reinvested, her money in the purchase of stocks, bonds, notes and other securities, and upon such terms and conditions and at such times as to him seemed best, retaining such stocks, bonds, notes and other securities in his exclusive possession and control during the whole time of such agency. He acted without charge or compensation for his services, and on or about January 1 rendered to appellee an annual statement concerning her property and business in his hands, which statement he transmitted to her in New York where she resided, except that no statement was made for January 1, 1902, in the early part of which year he became sick, and on June 16 departed this life. Decedent kept the papers and securities aforesaid in his private safe in his private office, in a paper box on which were the letters and word "S. A. Byram." This box was, at all times prior to his death, in his exclusive possession and control. About six or eight weeks before his death, and while he was too sick to go to his office, he directed that the box be brought to his house, which was done. He did not leave the house after that, and after his death the box was found in a locked bureau drawer. It contained the instrument sued on, a promissory note for $738.67, dated at Indianapolis, April 1, 1898, payable on demand to the order of S. A. Byram, at the Capital National Bank of Indianapolis, with six per cent interest from date and attorneys' fees, value received, and without relief from valuation laws, and signed "N. S. Byram." On the face of said instrument the words "Certificate thirty as collateral" were written, and on its back was the following: "Paid on this note July 26, 1898, $40, February 1, 1899, paid $157"—all in the handwriting of decedent. The instrument was folded in certificate number thirty of a corporation named, which certificate was for ten shares of $100 each in said corporation. The certificate

was dated April 23, 1898, and certified that N. S. Byram was the owner thereof. No assignment or indorsement by said Byram was on said certificate. The instrument sued upon was made by the use of an ordinary printed form, the blanks in which were filled in decedent's own handwriting. The indorsements on said note and the signature thereto were also in his handwriting. Said box contained notes, stocks, bonds, and the instrument in suit, copies of decedent's annual itemized statements rendered to appellee from 1878 to 1901. The itemized statements aforesaid are included in the finding of facts. They refer to certain securities and money which decedent held in his possession belonging to appellee. None of them make any reference to the instrument sued upon, nor to any note purporting to be executed by the decedent payable to appellee, nor do they show an indebtedness from him to her.

The fourth and fifth findings were in terms as follows: "(4) And the court further finds that at the time of the death of decedent said note was held by decedent as trustee and agent of claimant, and for her benefit, and not for the decedent individually. (5) That said Norman S. Byram as such agent had possession and control of said paper sued upon until the day of his death, and that, except as herein stated, he had never surrendered the same to claimant or to any other person for her use and benefit, and the claimant has never had any control or power over said paper, nor had the same in her possession or control; that afterwards all the papers, notes, stocks and bonds in said box were turned over to said claimant upon the order of this court, at the request and petition of the executor, except the paper sued upon, and the copies of the annual statements made by decedent to claimant."

The conclusions of law were that the note sued upon was executed and delivered by the decedent to appellee; that

she was the owner and holder thereof, and entitled to recover thereon the sum of $814.33; and judgment was rendered in accordance therewith.

The special findings, excluding the fourth and fifth items, contain a fair resumé of the evidence.

Appellant excepted to the conclusions of law, and filed a motion for a *venire de novo,* based upon the absence of a finding as to the execution of the note in suit. This motion was overruled, as was also its motion for a new trial. Errors are assigned upon each ruling.

The burden of establishing the execution of the note rested upon appellee, by reason of the statute regulating the trial of claims against decedents' estates. §2479 Burns 1901, Acts 1883, p. 151, §11. There was no controversy as to the note's having been written and signed by decedent, but execution includes delivery. *Nicholson* v. *Combs* (1883), 90 Ind. 515, 46 Am. Rep. 229; *Smith* v. *James* (1892), 131 Ind. 131.

1.

The actual controversy between the parties is as to whether the note sued upon was delivered. The execution of a promissory note is an ultimate fact. *Smith* v. *James, supra; Vaughan* v. *Godman* (1885), 103 Ind. 499, 502. If it had been found that the note was "delivered," the other facts necessary to execution being admitted, such finding would have been effective, but it is not in terms made. The finding is therefore insufficient to sustain the conclusions and judgment, unless the evidentiary facts set out are such as that but one inference can be drawn from them, in which event the absence of the statement of the ultimate fact does not prevent the court, as a matter of law, from drawing the unavoidable inference. If the facts found leave room for a difference of opinion between reasonable men, then the ultimate fact must be determined by the court or jury trying the case. *Keller* v. *Gaskill* (1894), 9 Ind. App. 670; *Cincinnati, etc., R. Co.* v. *Grames* (1893), 136 Ind. 39.

2.

It appears from the findings that decedent was appellee's agent from 1878 until his death, and that he had authority of the broadest character to make investments and take notes and securities for her. Persons who gave notes to such agent can not escape liability, when sued, because of the fact that appellee never had the instruments in her hands, and did not know of their existence or the existence of the makers. Delivery to the agent was delivery to the principal. *Skinner* v. *Baker* (1875), 79 Ill. 496; *Fletcher* v. *Shepherd* (1898), 174 Ill. 262, 51 N. E. 212; *Miller* v. *Irish Catholic, etc., Assn.* (1887), 36 Minn. 357, 31 N. W. 215; *Sowards* v. *Moss* (1899), 58 Neb. 119, 78 N. W. 373.

It is, however, contended that an agent can not act as such where his personal interest is or may be antagonistic to that of his principal, and that therefore decedent could not deliver his note to himself as the agent for appellee. The rule invoked is a wise and salutary one. It is designed to guard against the abuse of fiduciary duty, and all such transactions are void "as respects the principal unless ratified by him with a full knowledge of all the circumstances."

It is supplemented by the further rule that all profits and advantages procured by the agent in the transaction of agency affairs inure to the benefit of the principal, and it matters not whether such profit or advantage be the result of the performance or of the violation of the duty of the agent. Mechem, Agency, §469; *Rochester* v. *Levering* (1886), 104 Ind. 562, 568; *M'Cormick* v. *Malin* (1841), 5 Blackf. 509.

The doctrine asserted would be applicable were the agent attempting to compel his principal to take his note in the final settlement of their affairs, instead of the money with which he had been intrusted. It is not applicable where the principal elects to enforce the note made by the agent, as in the case at bar.

It remains only to inquire whether the inference of delivery necessarily arises from the facts disclosed by the finding. The note in suit is shown to have been written and signed by the decedent, and payments indorsed by him thereon. The business relation between him and appellee was one of extreme confidence upon her part. The annual statement constituted her means of information as to the investments made and the amount due. So far as those statements show, there was not due to her at any time the sum represented by the note in suit. The decedent, however, was not limited to the information contained in his own statements. He knew the absolute and entire truth. What seems to us a discrepancy was no doubt a simple circumstance to him, but in any event it is impossible to explain his conduct with regard to the note upon any theory except that he intended it to be paid, such intention being carried down to the time when the box was brought to him at his residence, since otherwise it is not believable that the shrewd and intelligent man of affairs would have left the note as he did among the papers belonging to and connected with appellee's affairs and marked with her name.

"The acts which consummate the delivery of a promissory note are not essentially different from those required to complete the execution of a deed." *Purviance* v. *Jones* (1889), 120 Ind. 162, 16 Am. St. 319; *Anderson* v. *Anderson* (1890), 126 Ind. 62.

"To constitute a delivery, there must be an intention to part with control over the deed as its owner." *Berry* v. *Anderson* (1864), 22 Ind. 36; *Dearmond* v. *Dearmond* (1858), 10 Ind. 191; *Vaughan* v. *Godman* (1884), 94 Ind. 191.

In the case of *Burkholder* v. *Casad* (1874), 47 Ind. 418, where a father made a deed to his infant children, and held the same, never having caused it to be recorded, the jury

were instructed that "It is sufficient if you find from the evidence, taking into consideration all the circumstances proved as surrounding the transaction, that John Burkholder either delivered it to some one for them, or intended to or did hold said deed for the benefit of his children." In approving the transaction the Supreme Court said: "We think there must be some act or declaration on the part of the grantor from which it may be inferred that he intended to part with the title to the property, and this whether the grantees be infants or adults. * * * It may be delivered without being actually handed over, and if once delivered its retention by the grantor does not affect the title of the grantee." *Nye* v. *Lowry* (1882), 82 Ind. 316; *Vaughan* v. *Godman, supra; Fulton* v. *Fulton* (1866), 48 Barb. (N. Y.) 581.

"No particular form is necessary to perfect the delivery of a deed. * * * A deed may be delivered by any acts or words evincing the intention of the grantor to deliver it. Thus in *Folly* v. *Vantuyl* [1827], 4 Halst. *153, Folly made a bond to his daughter, and, holding it up to her, said, 'Mary, this is your bond, what shall I do with it?'—adding, 'I will take care of it for you.' He then indorsed it 'Mary's bond,' and put it away in his trunk. This was held to be a good delivery." *Mallett* v. *Page* (1856), 8 Ind. 364. See, also, *Somers* v. *Pumphrey* (1865), 24 Ind. 231, 240. Where the grant is to a child and is beneficial, its acceptance is presumed, although the deed remains in the possession of the grantor. *Vaughan* v. *Godman* (1885), 103 Ind. 499, 502.

The second finding of facts is in part as follows: "That all indorsements on said note and the written portion of said note, including the signature, were made by and in the handwriting of said decedent, and were placed in said box for the purpose, and with the intention of delivering the same to said claimant. The same was at the time of de-

cedent's death left in said box, among the papers of said claimant, by said decedent for the use and benefit of said claimant."

The possession of the instrument by the maker, acting as agent for the payee, does not prevent the application of the rule relative to delivery to a third person, as is shown by the cases above cited. Cases in which the grantor is treated as agent for the grantee are very numerous. The following are a few of them:

One member of a partnership made a deed to himself and the other partners, retaining possession of the deed. It was contended that there was no delivery because the deed had been retained by the grantor. The Supreme Court said: "It is fairly inferable from the allegations of the complaint, that the property was purchased and held as partnership property, and, of course, the delivery of a deed to one partner would be a delivery to the partnership. If the complaint did not show partnership, there would be no force in appellant's argument, for delivery to one of several grantees would be valid and effective as to all." *Henry* v. *Anderson* (1881), 77 Ind. 361. See, also, *Tucker* v. *Bradley* (1860), 33 Vt. 324.

The delivery of a chattel mortgage was held good although made to the agent for the mortgagee who was also attorney for the mortgagor. *Fletcher* v. *Martin* (1890), 126 Ind. 55. See, also, *Squires* v. *Summers* (1882), 85 Ind. 252; *In re Reeve's Estate* (1900), 111 Iowa 260, 82 N. W. 912; *Munro* v. *Bowles* (1900), 187 Ill. 346, 58 N. E. 331, 54 L. R. A. 865; *Stewart* v. *Weed* (1858), 11 Ind. 92; *Blight* v. *Schenck* (1849), 10 Pa. St. 285, 51 Am. Dec. 478.

It is universally held that the absolute retention of control over the instrument by the maker is inconsistent with the intention to deliver. *Fifer* v. *Rachels* (1901), 27 Ind. App. 654; *Osborne* v. *Eslinger* (1900), 155 Ind. 351, 80 Am. St. 240. Cases of this class are distinguished from the

one at bar in that the maker of the note sued upon here was the agent of the payee, expressly authorized to take and hold paper for her, while in those cited the person holding the instrument was the agent of the grantor exclusively.

It was said by the Supreme Court in *Hatton* v. *Jones* (1881), 78 Ind. 466, 472: "We do not think that a person could appoint himself as trustee and then make a valid delivery of his own property to himself as such trustee; or that an intention or promise to give would make a perfected gift so as to constitute the intender or promisor a trustee for the use of the intended or promised beneficiary." That case is distinguished from the one at bar in that the agency relied upon here is not self created, nor does it arise out of the transaction in which the note was made.

That part of the fifth finding to the effect that appellee never had control or power over said paper was evidently intended to refer to physical control and manual possession. So construed it is not inconsistent with the rest of the finding. Taking them together, it sufficiently appears that the note sued upon was held by decedent as the agent of appellee, and is therefore enforceable at her suit.

Judgment affirmed.

Comstock, C. J., Robinson, P. J., Black and Myers, JJ., concur; Wiley, J., dissents.

## DISSENTING OPINION.

WILEY, J.—I am unable to agree with my associates either in the conclusion reached in the majority opinion, or in the reasoning leading thereto, and owing to the importance of the question involved, I have concluded to express my views in a dissenting opinion. The facts upon which the decision of the questions involved must rest are fairly and fully stated in the majority opinion, and need not be repeated here.

To entitle appellee to a recovery, it must affirmatively appear from the facts specially found that the note in con-

troversy was in fact delivered. I do not need to pause to enlarge upon this elementary proposition, or to cite authorities in support of it.

Counsel for appellant have insisted, and argued at some length, that parts of the special finding of facts are conclusions merely, and not statements of substantive, issuable facts. I do not deem it important to determine whether or not some conclusions are stated as facts, for it is the rule in this State that if the special findings contain sufficient facts to warrant the conclusions of law stated thereon, such special findings will not be deemed to be defective because they may state some evidentiary facts or conclusions of law. In such event the latter will be treated as surplusage. *Baldwin* v. *Threlkeld* (1893), 8 Ind. App. 312; *City of Indianapolis* v. *Kingsbury* (1885), 101 Ind. 200, 51 Am. Rep. 749; *Whitcomb* v. *Smith* (1890), 123 Ind. 329.

The decisive question is whether the ultimate facts found are sufficient upon which to rest the conclusions of law; or, in other words, whether the conclusions of law are warranted by the ultimate facts. If the facts show that there was a delivery of the instrument sued on, either actual or constructive, then they are sufficient to support the conclusion of law that appellee is entitled to recover. On the contrary, if the facts do not show the execution of the note, which includes a delivery, then the conclusions of law are wrong. *Palmer* v. *Poor* (1889), 121 Ind. 135, 6 L. R. A. 469; *Anderson* v. *Anderson* (1890), 126 Ind. 62; 4 Am. and Eng. Ency. Law (2d ed.), 201, and authorities there cited.

The special findings, on the question of the delivery, go only to the extent that it was the intention of the decedent to deliver the note to appellee, and that at the time of his death he left it in a certain box, among the papers of the appellee, for her use and benefit. In addition is the following: "And the court further finds that at the time of the death of decedent said note was held by decedent as

trustee and agent of claimant for her use and benefit, and not for the benefit of the decedent individually." The additional facts that have any bearing upon the question at issue are stated in the fifth finding, to the effect that the decedent, as an agent of appellee, had possession and control of the note until the day of his death, and that "except as herein stated," he never surrendered the same to appellee or any person for her use and benefit, and that she never had any control or power over it, or had it in her possession. This finding must be construed in connection with those that precede it, in which it is stated that the decedent held the note as the agent and trustee of appellee, and placed it in the box for the purpose and intention of delivering it to her.

Do these facts constitute a delivery of the note? This inquiry must be answered, in my judgment, in the negative. There is no finding that the decedent ever parted with the note, that he ever delivered it to the appellee, or that he ever delivered it to a third person for her use and benefit, or to be by such person delivered to her. These facts show that he never surrendered dominion over the instrument. This being true, he could have destroyed it at any time, for he had it in his possession to the hour of his death.

Tiedeman, Commercial Paper, §34, lays down the rule, that so necessary is delivery to the life of a bill or note that, if it is found among the papers of the drawer or maker at his death, it can not be sued on by the payee. He further states the rule to be in such case that the personal representative can not make an effectual delivery of it. A case directly in point upon the first proposition above stated by Mr. Tiedeman is that of *Disher* v. *Disher* (1712), 1 P. Wms. 204. See, also, the case of *Smith's Executors* v. *Wyckoff* (1845), 3 Sand. Ch. 84.

The findings show that the decedent was the agent for appellee for certain specific purposes, and these were that as such agent he had been for a number of years, and up to the time of his death, "loaning and reloaning, and investing

and reinvesting, her money in the purchase of stocks, bonds, notes and other securities." This fixes and limits his authority as appellee's agent, and, so far as the findings show, he possessed no other power or authority whatever.

It is clear that there was no delivery of the note to the payee, and, if there was in fact a delivery, it was delivered by the maker to himself, as agent or bailee for the use and benefit of appellee. This suggests the inquiry: Can an agent deal with himself so as to make the delivery of his own note to himself, as agent, effective for the benefit of the payee? The authorities answer this inquiry in the negative. Mechem, Agency, §§66, 68, 355, 368, 375, 467; *Hatton* v. *Jones* (1881), 78 Ind. 466; Reinhard, Agency, §54.

In *Hatton* v. *Jones, supra,* the court said: "We do not think that a person could appoint himself as trustee and then make a valid delivery of his own property to himself as such trustee; or that an intention or promise to give would make a perfect gift so as to constitute the intender or promisor a trustee for the use of the intended or promised beneficiary."

Upon the question of delivery, the Supreme Court, in *Purviance* v. *Jones* (1889), 120 Ind. 162, 16 Am. St. 319, said: "That an instrument is not complete and effectual until it has been delivered, or until that has been done which is legally equivalent to a delivery, is elementary. * * * To constitute a delivery it must appear that the maker, in some way, evinced an intention to make it an enforceable obligation against himself, according to its terms, by surrendering control over it, and intentionally placing it under the power of the payee, or of some third person, for his use. * * * The final test is, did the maker do such acts in reference to the deed, or other instrument, as evince an unmistakable intention to give it effect and operation, according to its terms, and to relinquish all power and control over it in favor of the grantee or obligee?" The rule

there declared is decisive of this case. There is not a fact found that even tends to disclose that the decedent did any act or acts in reference to the note that evinced an unmistakable intention to give it effect and operation, or to relinquish all power and control over it in favor of the appellee.

In his discussion of the necessity of the delivery of a written instrument, so as to give it validity, Mr. Daniel declares the rule to be that so long as a note remains in the hands of the maker it is a nullity. 1 Daniel, Negotiable Inst. (5th ed.), §63; *Bayley* v. *Taber* (1809), 5 Mass. 286, 4 Am. Dec. 57; *Marvin* v. *M'Cullum* (1822), 20 Johns. 288; *Freeman* v. *Ellison* (1877), 37 Mich. 459; *Smith* v. *Foster* (1860), 41 N. H. 215; *Dexter Savings Bank* v. *Copeland* (1885), 77 Me. 263; *McFarland* v. *Sikes* (1886), 54 Conn. 250, 7 Atl. 408, 1 Am. St. 111.

Also, that, even though it be placed by the maker in the hands of his agent for delivery, it is still undelivered as long as it remains in his hands and may be recalled; and while there the payee has no right to it unless it be wrongfully withheld by the agent. The author cites many authorities in support of the proposition, to which reference is made. 1 Daniel, Negotiable Inst. (5th ed.), §63. Again, the same author says in the above section: "So essential is delivery, that it has been held that where a promissory note, the writing of which was unknown to the payee, lay in the maker's possession, and was found among his papers after his death, the payee could not claim or sue upon it; and though such a note should be found, accompanied with written directions to deliver it to the payee, the payee will still have no right of action, unless the directions be valid as a testament." No pretense is made in this case that the payee of the note—appellee—knew that it was in existence until after the death of the maker, and she never had it in her possession, or exercised any control or dominion over it.

Mr. Daniel also lays down the rule that if the party who has signed or indorsed the instrument die before delivery

it is a nullity, and can not be delivered by his personal representatives. 1 Daniel, Negotiable Inst. (5th ed.), §64.

The following authorities support the text: *Clark* v. *Boyd* (1825), 2 Ohio 56; *Clark* v. *Sigourney* (1846), 17 Conn. 511; *Bromage* v. *Lloyd* (1847), 1 Exch. 32; *Drum* v. *Benton* (1898), 13 App., D. C., 245.

To constitute the delivery of a deed, there must be an intention of the vendor to part with the control over it as its owner. *Berry* v. *Anderson* (1864), 22 Ind. 36. In *Hotchkiss* v. *Olmstead* (1871), 37 Ind. 74, the court said: "To constitute a delivery, there must be an intention to part with the control over the instrument, and place it under the power of the grantee, or some one for his use."

A man signed and acknowledged deeds, conveying his real estate to three sons, put the deeds in envelopes, and placed the envelopes in a box on a mantel in his room. He afterward stated to a third person that he did not have any land, that he had conveyed it to his sons, and that one son had his deed, and that the deeds for the other two sons were in a box for them. After his death the deeds to his two sons were not found in the box where he said he put them. It was held there was no delivery.

In *Osborne* v. *Eslinger* (1900), 155 Ind. 351, 80 Am. St. 240, the following facts were exhibited: A grantor signed and acknowledged certain deeds and placed them in an envelope with her name and the words "Deeds to Children" indorsed thereon. She kept them in her possession for about two years, and then handed a package containing the deeds to an aged relative, who lived with her, and intrusted her to take care of the papers until after her death, and then deliver them to the one who was to settle her estate. She afterward took possession of the package and placed them in a press in her house, saying to a relative: "In case I get sick, you take care of these papers, and when I die give them to the one who settles my estate." Soon afterward she became sick, and called the relative to her

bedside and asked her if she had taken charge of the papers, and being informed that she had, said: "All right." The custodian of the package did not know what it contained, but, after the death of the grantor, delivered the deeds to the grantees therein named. The Supreme Court, upon these facts, held there was no delivery. See, also, *Fifer* v. *Rachels* (1901), 27 Ind. App. 654.

It is clearly discernible from the authorities that, to constitute a delivery of a deed, there must be a complete surrender and parting with control of the same by the grantor, and it must pass under the power and control of the grantee or some one in his behalf.

The rule is equally as strict in regard to the delivery of promissory notes. In *Palmer* v. *Poor, supra,* it was said: "Delivery is a part of the execution of a promissory note, and until delivery it is destitute of force."

In *Bean* v. *Bean* (1902), 71 N. H. 538, 53 Atl. 907, securities were left by a decedent in an unsealed envelope in his wife's possession; on the envelope, in the handwriting of the decedent, was the statement: "The Property of Electa C. Bean [wife] and Emma R. Mead [daughter];" the securities were certificates of stock and savings-bank-books, which they described in detail; the daughter knew nothing of the package until after the death of her father; the stocks and bank-books were not assigned; the decedent had previously caused to be transmitted to his wife and daughter certificates of other corporations. Under these facts it was held that there was no delivery of the securities, and hence no gift.

In *Cutting* v. *Gilman* (1860), 41 N. H. 147, it is said *arguendo:* "Delivery is essential, both at law and in equity, to the validity of a parol gift of a chattel, and without actual delivery the title does not pass."

In *Streissguth* v. *Kroll* (1902), 86 Minn. 325, 90 N. W. 577, it was said: "The delivery of a written instrument is one of intention, and, to constitute a complete delivery

thereof, it must be made in a manner evincing an intention to part presently and unconditionally with all control over the instrument, and thereby give it effect."

The rule, as I understand it, is without variance, that there can be no delivery, either actually or constructively, of a written instrument, without an intention to deliver on the part of the maker or grantor, for the essence of delivery is the intention of parties, and the intention must be clear that the maker or grantor intended to part with all control and dominion over the instrument. He must put it beyond his control.

Mr. Tiedeman lays down the rule as follows: "In determining what will constitute a sufficient delivery, it is found that the intention is the controlling element." Tiedeman, Real Prop. (2d ed.), §813, citing authorities.

It is also held that an intention to deliver an instrument, not carried out by the maker, will not be sufficient. *In re Crawford* (1889), 113 N. Y. 560, 21 N. E. 692, 5 L. R. A. 71; *Fifer* v. *Rachels, supra; Walls* v. *Ritter,* 180 Ill. 616, 54 N. E. 565. So far as I am advised, the unbroken rule is that the retention of the instrument in the possession of the maker or grantor, and his absolute dominion over it, are inconsistent with a delivery thereof.

Again, the question of delivery is a question of fact. It is an ultimate fact, and in this case the burden was upon appellee to establish that fact. In *Vaughan* v. *Godman* (1884), 94 Ind. 191, it was said: "The question of delivery is a question of fact to be determined on the evidence. In all disputes as to whether a deed has been delivered, the most important inquiry is to ascertain the intent of the grantor in the act, or several acts, which it may be claimed constituted a delivery. Did he intend to part with all control over the deed? Did he intend to divest himself of the title and lodge it in the grantee?"

It is essential to delivery that the minds of both parties should assent, in order to bind them, and if, through in-

attention, infirmity or otherwise, one does not assent, the act of the other is nugatory. 1 Daniel, Negotiable Inst. (5th ed.), §67; *Ferguson* v. *Miles* (1846), 8 Ill. 358, 44 Am. Dec. 702; *Fonda* v. *Sage* (1866), 46 Barb. 109, 123; *Whyte* v. *Rosencrantz* (1899), 123 Cal. 634, 56 Pac. 436, 60 Am. St. 90.

To determine whether the facts specially found will warrant a judgment in favor of appellee, I must apply the rules of law which I have been considering to the facts found. The fact of delivery of the note is not found in terms. The findings in this regard go only so far as to show that the written part of the note, signature and indorsements, were in the handwriting of the decedent; that the note was left by decedent in a box, in which other papers, bonds, etc., belonging to appellee were kept by decedent; that the note was in a certificate of stock, and an indorsement that it was intended as collateral; that the note remained in his exclusive possession and control up to the time of his death, and that appellee never had possession of it or dominion over it; that the note was placed in the box by the decedent "with intent to deliver the same to claimant;" that decedent was the agent of appellee to loan and invest money for her; that he held such note "as trustee and agent of claimant and for her benefit, and not for the decedent individually;" that he had never, "except as herein stated," surrendered the same to "claimant or to any other person for her use and benefit." It is also found as a fact that during all the years decedent was acting as appellee's agent he made annual statements to her of the business he had transacted for her as such agent, and the last three statements, covering the years since the date of the note, are set out in full. These statements speak for themselves, and it is a significant fact that none of them make any mention of the note in controversy, while all other transactions are itemized. In none of the last three statements is the amount of the note required to balance the account between them.

The statement of January 1, 1899, shows that he had securities and cash of ·hers, aggregating $24,295. January 1, 1900, $25,625, less cash overdrawn, $404; and January 1, 1901, $26,362, which included $858 in cash. The statement of January 1, 1899, showed that he held for her seventeen notes, that of January 1, 1900, fifteen notes, and that of January 1, 1901, thirteen notes. It is a strange coincidence that the decedent had the note in suit in his possession, and considered it a binding obligation against himself, and never mentioned it when rendering to appellee an account of his stewardship. The fact is apparent that the decedent accounted for all the money and securities of appellee, in his possession, and under his control.

There is but one finding that can possibly be tortured into a finding of the ultimate fact of delivery, and that is the fourth, and the effect of that is that decedent, as "trustee and agent," held the note for appellee. The word "trustee" adds no force to the finding, for not a fact is stated which constituted decedent a trustee. Under the statute appellant was entitled to prove all defenses to the action, except set-off and counterclaim, without answer. §2479 Burns 1901, Acts 1883, p. 151, §11. Under the statute, therefore, the plea of *non est factum* was in, and appellee was required to prove the execution of the note, and this includes delivery. As I have shown in a former part of this opinion, decedent could not constitute himself appellee's agent, for the purpose of delivery to himself as such agent his own individual note. He could not execute his own note to himself, as agent for appellee, without her knowledge or consent, and, as he could not, it was not executed.

If appellee's theory is correct, then an agent who has authority to loan his principal's money and take notes for it could *sua sponte,* execute his own note to himself, or, in other words, contract with himself, and thus use or dissipate his principal's money, and yet not be guilty of embezzlement, although utterly insolvent.

In the case before us the fact is established that the decedent signed the note and delivered it to himself as appellee's agent. So far as its execution is concerned he did no more. He, was in absolute control and possession of it. The payee was ignorant of its existence so far as the facts show. No indebtedness is shown to have existed from decedent to appellee. He could have destroyed or recalled the note at any time before his death, without doing any unlawful act, or rendering himself liable for its destruction. The findings show that he intended the note for appellee, but an unexecuted intention is not effective. The special findings do not show a delivery of the note, and as delivery was an essential fact in its execution, the findings are insufficient to support the conclusions of law.

There can be no presumption in favor of appellee on the question of delivery, and, even if there could be, such presumption could not control the failure of the findings to show affirmatively a delivery, in the face of the burden resting upon appellee. *Galpin* v. *Page* (1873), 18 Wall. 350, 21 L. Ed. 959.

The judgment should be reversed, and the court below directed to restate its conclusions of law and render judgment for appellant.

## ON PETITION FOR REHEARING.

ROBY, J.—The instruction approved in *Burkholder* v. *Casad* (1874), 47 Ind. 418, authorized a finding of delivery from the fact that the grantor intended to and did hold a deed for the benefit of the grantees, who were his minor children. Appellant's counsel differentiate the authority by reason of the fact that the rights of no minor child are involved in the case at bar. The basic principle of that decision, as of this one, is in the existence of a fiduciary relation between the person holding the instrument and the person beneficially entitled thereunder. Parent and child, guardian and ward, principal and agent, are equally fidu-

ciary relations, and equally require the application of the doctrine. The parent holds for his child, the guardian for his ward, the agent for his principal. When the note in suit was executed, the contract which it is now sought to enforce became complete. If its consideration was money held by the maker as agent, the principal might ignore the note and recover the fund, but suing on the note she simply enforces a contract made by the decedent and as binding upon his representatives as it was upon him.

The petition for rehearing is overruled. Comstock, C. J., Robinson, P. J., and Black, J., concur; Wiley, J., dissents; Myers, J., not participating.