SCOTT, ADMINISTRATOR OF ESTATE OF SCOTT, DECEASED, ET AL. *v.* SCOTT ET AL.

[No. 18,629. Filed June 10, 1955. Rehearing denied July 21, 1955. Transfer denied November 15, 1955.]

4

*Prentice & Prentice* and *Robert J. Prentice,* of Jeffersonville, for appellants. ·

*John F. Simpson,* of Charlestown, *McBride & Smith,* and *Homer D. Smith,* of Jeffersonville, for appellees.

BOWEN, J.—Appellants brought an action against the appellees to set aside a deed to certain real estate. One of the appellants was the administrator of the decedent-grantor's estate, and the other appellants were children of the decedent grantor, and the appellees were the decedent-grantor's widow, Mildred Lucille Scott, and his other children, Melvin F. Scott, Terry G. Scott and Mary Alice Scott.

The issues were formed in the court below by appellants' complaint alleging that the decedent died intestate as the owner of certain real estate, leaving the appellants, in their individual capacity, and the appellees, as his sole and only heirs at law; that during his lifetime the said decedent and his wife, Mildred Lucille Scott, signed and acknowledged a deed to said real estate, in which deed the appellees (excepting said widow) were named as grantees. The complaint further alleged that the deed was never delivered but was recorded subsequent to the death of said decedent. To this complaint

the appellees filed an answer in two paragraphs, the first paragraph under Rule 1-3, Rules of the Supreme Court of Indiana, denying the allegation that decedent was the owner of the real estate in question at the time of his death, and denying the allegation that the deed in question was not delivered; and by the second paragraph of answer appellees alleged the execution and the delivery of the deed in escrow to one Frank Waters, cashier of The New Washington State Bank, and a later delivery of the same deed by the decedent to his wife for and on behalf of the other appellees, to be recorded on the day following the death of Scott.

On such issues joined there was a trial by the court and the court by its general finding and decree determined that the decedent died intestate, leaving surviving him as his sole and only heirs at law his widow, the defendant-appellee, Mildred Lucille Scott, and five children, to-wit: the plaintiffs-appellants, Merrill Scott and Sherrill Scott, and the defendants-appellees, Melvin F. Scott, Terry G. Scott and Mary Alice Scott; that during his lifetime the decedent and his wife signed and acknowledged a deed to such real estate in which the defendants-appellees, Melvin F. Scott, Terry G. Scott and Mary Alice Scott, were named as grantees; that the deed was delivered in the lifetime of said decedent to his wife to be held by her until the death of said decedent for and on behalf of the infant grantees named in such deed, the appellees herein, Melvin F. Scott, Terry G. Scott and Mary Alice Scott, and to be placed of record for and on behalf of such grantees following the death of said decedent. The court further ordered that the appellants take nothing by their complaint, and that the deed in question was in full force and effect.

Thereafter, the appellants filed their motion for a new

trial, which was based upon the single ground that the decision of the court is contrary to law. The court overruled this motion for a new trial and this appeal followed. Sole error assigned for reversal is that the court erred in overruling appellants' motion for a new trial.

The appellants' assignment of error, and the argument offered in support thereof, presents a single question for the determination of this court, and that is, whether there is any evidence of probative value to support the finding and judgment of the trial court that there was a delivery of the deed during the lifetime of the testator, with the intention to vest title in the appellees, and whether, as a matter of law upon such facts, the court could have properly concluded there had been a delivery of the deed in question.

There is little conflict in the evidence in the record and some of the evidence was stipulated by the parties. From the record in this case, considering the evidence most favorable to the appellees, which we are required to do, the following facts appear:

The decedent, accompanied by his wife, Mildred Lucille Scott, went to the office of an attorney and had a deed prepared, which they executed, conveying the real estate in question to their children, Melvin F. Scott, Terry G. Scott and Mary Alice Scott, the appellees, in joint tenancies, and in further consideration of the discharge of certain promissory notes executed by the grantors in favor of the grantees, and each of them. After such deed was prepared it was placed in an envelope. The attorney who prepared the deed gave the envelope in which the deed was contained to the decedent. Thereafter, on the same day, the decedent went to the bank and talked with the cashier of the bank with reference to such deed that he had executed

along with his wife, and brought some papers along with him, and he suggested that the cashier take and keep said papers, but the cashier suggested "that he get a lock-box and keep it in there. We didn't like to keep papers around the bank." The cashier then leased him a lock-box. At that time the lock-box was leased to the decedent for the particular purpose of placing the instruments in the box, and the deed was placed in the lock-box of the decedent at this time. At the time of the renting of the lock-box the cashier issued two keys to it which were given to the decedent. At the time of this transaction the bank cashier saw a letter which was with the instruments which the decedent had, which letter reads as follows:

"Mr. Frank Waters February 1, 1950
New Washington State Bank
New Washington, Indiana

Dear Frank:

Today my wife and I executed a deed to the farm owned by me in favor of our three younger children, namely: Melvin F., Terry G., and Mary Alice Scott. Also at the same time executed a bill of sale in favor of these three children.

These instruments are in the attached envelope and you are requested to accept delivery of these instruments and to hold them in escrow until my death, at which time you will please deliver the same to my three children named above.

I have two other children, but they have received their proportionate share of my estate in the nature of advancements heretofore made to them and evidenced by promissory notes in my possession.

I am indebted to each of my younger three children and have executed to them from time to time, promissory notes and upon delivery of these instruments it is my desire that you receive from them the notes executed by me in favor of each of them as it is my intention that the instruments enclosed, upon their delivery, shall constitute full payment of the notes now held by them.

In the event of any change in my plans, and these instruments are to be revised, destroyed, or in any way changed by me, you shall redeliver them to me at my request.

Respectfully yours,
s/ Gilbert P. Scott.

s/ Homer D. Smith
s/ Lovenia Graham
Witnesses"

It is apparent from the terms of this letter that the grantor did not part with his dominion and control over this deed in favor of Mr. Waters, the bank cashier. However, the appellees assert that, although the grantor made an ineffective delivery of the deed to Mr. Waters, there was a new, independent, complete and effective delivery of this deed to his wife, Mildred Lucille Scott, vesting title in the appellees. The evidence most favorable to appellees as to this alleged later delivery is as follows:

The decedent held the keys to the lock-box at the bank in which this deed was deposited until about September 15, 1953. Both keys, and the only keys to this lock-box outside of the bank master key, were wired together and were kept that way from the time the box was rented until the death of the decedent. About September 15, 1953, the decedent turned these keys over to appellee, Mildred Lucille Scott, and stated to her at the time he turned them over to her, that he wanted her to take the keys and the day after his death see that the deed was recorded for the children, the three children at home. There was testimony that decedent stated, with reference to the keys, that he had placed the deed and the keys out of his possession; that he had delivered the keys to his wife, and the deed, so it would be out of his possession forever, and that he had made this

deed out to the three children and he wanted them to have it; and that he had delivered the keys to his wife to make doubly sure they would get it.

The appellants contend that by reason of the stipulated facts that the deed was recorded after the decedent's death, and that it was in the safety deposit box of the decedent at the time of his death, as a matter of law, the lower court was required to determine that the deed in question had not been delivered during his lifetime, citing *Fifer* v. *Rachels* (1901), 27 Ind. App. 654, 62 N. E. 68; and *Indiana Trust Co.* v. *Byram* (1905), 36 Ind. App. 6, 72 N. E. 670, 73 N. E. 1094.

The appellants further contend that they have proved prima facie that the deed was not delivered, and it was therefore void, and that the burden of going forward with the evidence and proving that there was a delivery of the deed fell upon appellees, and that appellees have failed to prove such a delivery. In this contention, the appellants rely on the case of *Osborne* v. *Eslinger* (1900), 155 Ind. 351, 58 N. E. 439. An examination of this well reasoned opinion, the Supreme Court speaking through Judge Dowling, reveals that it does not afford a solution for the questions raised in this appeal. In the *Osborne* case, *supra,* the Supreme Court points out that "The ruling English cases and some of the American decisions hold that, in the case of deeds of settlement, manual delivery of the instrument, or the equivalent of such delivery, is not indispensable". Citing *Clavering* v. *Clavering,* 2 Vern. 473, 476; *Barlow* v. *Heneage,* Prec. Cha. 211; *Naldred* v. *Gilham,* 1 P. Wms. 577; *Boughton* v. *Boughton,* 1 Atk. 625; *Taw* v. *Bury,* Dyer, 167b; *McLure* v. *Colcough,* 17 Ala. 89; *Newton* v. *Bealer,* 41 Iowa 334; *Shirley* v. *Ayres,* 14 Ohio 307, 45 Am. Dec. 546; *Martin* v. *Flaharty,* 13 Mont. 96, 19 L. R. A. 242; *Farrar* v. *Bridges,* 5 Humph.

·(Tenn.) 411, 42 Am. Dec. 439. The court further stated in *Osborne* v. *Eslinger, supra:*

> "But in this State, the authorities are uniform that, even in the case of a voluntary deed of settlement, delivery is essential to the validity of the deed, and that it must be made either to the grantee or to some third person for his use. It follows from what has been said that the deeds which were signed and acknowledged by Mrs. Osborne were never delivered, and that they were void for that reason."

However, when we examine the foregoing reasoning of the court in the light of the facts of this Osborne case, we find that Mrs. Osborne, the grantor, handed the deeds wrapped together in a paper, to one Mary Davis, an aged sister-in-law, who made her home with her, saying that she desired Mrs. Davis "to take care of the papers, and keep them until after her, Mrs. Osborne's death, and then deliver them to the one who should settle her estate." Upon reflection, and because of the advanced age of Mrs. Davis, who was then seventy-two years old, Mrs. Osborne took back the papers, and put them in a "press" in her home, and told Mrs. Davis she had placed them there, adding, "In case I get sick, you take care of these papers, and when I die give them to the one who settles my estate." Mrs. Osborne was then in good health, but soon afterwards became very ill. Agreeably to her instructions, Mrs. Davis took the papers from Mrs. Osborne's "press", and deposited them in a box of her own, over which she had exclusive control, and so kept them until after the death of Mrs. Osborne. The next day after Mrs. Osborne was taken sick she called Mrs. Davis to her bedside, and asked if she had taken charge of the papers as she, Mrs. Osborne, had requested. Mrs. Davis answered, "Yes, I have." Mrs. Osborne responded,

"All right." Mrs. Osborne died April 23, 1897. The court properly held that upon such facts shown that the decedent never intended to surrender her right to the possession and control of the deeds, and that, in contemplation of law, the possession of Mrs. Davis was that of an agent of Mrs. Osborne, and not as the trustee or agent of the grantees, and in discussing the rules governing the delivery of deed the court further stated:

"The rule is thus stated by eminent textwriters: 'Where a grantor executes a deed, and delivers it to a third person to hold until the death of the grantor, the latter parting with all dominion over it, and reserving no right to recall the deed, or alter its provisions, it seems to be settled by the weight of authority that the delivery is effectual, and the grantee, on the death of the grantor, succeeds to the title.' Devlin on Deeds (2nd ed.), §280, citing *Lang* v. *Smith*, 37 W. Va. 725, 17 S. E. 213; *Ruggles* v. *Lawson*, 13 Johns. 285; *Tooley* v. *Dibble*, 2 Hill 641; *Goodell* v. *Pierce*, 2 Hill 659; *Squires* v. *Summers*, 85 Ind. 252; *Bury* v. *Young*, 98 Cal. 446, 33 Pac. 338.

" 'In determining what will constitute a sufficient delivery, it is found that the *intention* is the *controlling element*. No particular formality need be observed, and the intention to deliver the deed may be manifested by acts, or by words, or both. But one or the other must be present to make a good delivery.' Tiedeman on Real Prop. (2nd ed.), §813.

" 'Where the deed is delivered to the grantee named, the law presumes it was done with an intent, on the part of the grantor, to make it his effectual deed; but if it is delivered to a stranger, and nothing is said at the time, no such inference is drawn from the act of delivery. . . . If delivered to the grantee himself, no words are necessary, since the law presumes in such case it is for his use. If delivered to a stranger, there is no such presumption; and there must, therefore, be some evidence, beyond such delivery of his intent there-

by to part with his title. But no precise form of words is necessary to declare such intent. Anything that shows that the delivery is for the use of the grantee is enough.' 3 Washb. on Real Prop. (5th ed.), p. 314, §582.

"Where the claim of title rests upon the delivery of the deed to a third person, the deed must have been properly signed by the grantor, and delivered by him, or by his direction, unconditionally, to a third person for the use of the grantee, to be delivered by such person to the grantee, either presently, or at some future day, or upon some inevitable contingency, the grantor parting, and intending to part, with all dominion and control over it, and absolutely surrendering his possession and authority over the instrument, so that it would be the duty of the custodian or trustee for the grantee, on his behalf, and as his agent and trustee to refuse to return the deed to the grantor, for any purpose, if demand should be made upon him. And there should be evidence beyond such delivery of the intent of the grantor to part with his title, and the control of the deed, and that such delivery is for the use of the grantee." (Our italics.)

In *Fifer* v. *Rachels, supra,* relied upon by appellants, the grantor executed a deed, placed it in an envelope on which was endorsed "valuable papers", and deposited it with a bank subject to his will or his order, the deed so remaining with the bank until the death of the grantor, and the court held there was no delivery of the deed sufficient to pass title of the real estate. It is obvious, therefore, that in this Fifer case the grantor retained dominion and control over the deed until his death.

In *Burkholder et al* v. *Casad et al.* (1874), 47 Ind. 418, the court stated:

"We think there must be some act or declaration on the part of the grantor, from which it may be inferred that he intended to part with the title to the property, and this whether the grantee be

infants or adults. The deed may be delivered to the grantee, or to some other person for him. . . . It may be delivered without being *actually handed over,* and if once delivered its retention by the grantor does not affect the title of the grantee.

"It is clear, however, that a deed may be written, signed, acknowledged, and certified, and still be inoperative for want of delivery. No particular act or form of words is necessary to constitute a delivery of a deed. Anything done by the grantor, from which it is apparent that a delivery was intended, either by words or acts, or both combined, is sufficient. See *Somers* v. *Pumphrey,* 24 Ind. 231, and cases cited." (Our italics.)

In *Klingaman* v. *Burch* (1940), 216 Ind. 695, 25 N.E. 2d 996, a case in which a deed was found in the lock-box of the grantor on his death, and one of the later pronouncements of the Supreme Court on the subject of delivery of deeds, the following rule is announced:

"In all disputes as to whether or not a deed has been delivered, the most important inquiry is to ascertain the intent of the grantor, in the act or several acts, which, it may be claimed, constitute a delivery. Did he intend to part with all control over the deed? Did he intend to divest himself of the title and lodge it in the grantee?

"A deed may be delivered by any act or word, or both, evincing the intention of the grantor to deliver it. The law does not prescribe any particular form of words or actions as necessary to constitute a delivery. Anything done or said by the grantor from which it is apparent that a delivery is thereby intended, either by words or acts, or by both combined, is sufficient. *Berry* v. *Anderson,* 22 Ind. 36. . . . In the case of *Vaughan* v. *Godman,* 94 Ind. 191, the court quoted with approval the following excerpt from *Thatcher* v. *St. Andrew's Church,* 37 Mich. 264.

" 'The act of delivery is not necessarily a transfer of the possession of the instrument to the grantee

and an acceptance by him, but it is the act of the grantor, indicated either by acts or words or both, which shows an intention on his part to perfect the transaction, by a surrender of the instrument to the grantee, or to some third person for his use and benefit.' "

From all of the adjudicated cases it seems apparent that the real test is whether the grantor by any acts or words, or both, in reference to the deed evinces an unmistakable intention to surrender all possession and control of the same in favor of the grantees and to give it effect and operation according to its terms. *Burkholder et al.* v. *Casad et al., supra; Purviance, Admr.* v. *Jones* (1889), 120 Ind. 162, 21 N. E. 1099; *Anderson et al.* v. *Anderson et al.* (1890), 126 Ind. 62, 24 N. E. 1036; *Klingaman* v. *Burch, supra.* See also 16 Am. Jur., Deeds. §142, p. 516

While it is apparent that this case is one of first impression in this state upon the facts shown, applying the well established rules of law to the undisputed facts in this case, it seems clear that there was sufficient evidence of probative value for the lower court to have concluded that there was a delivery of the deed in the instant case to a third party with a present intention to vest title in the grantees, and to relinquish all power and control over the deed by the grantor.

In the instant case, the grantor, having placed the deed in question in a safety deposit box, thereafter, by both positive and unequivocal and unmistakable language, and by his definite acts, delivered the keys to such deposit box to a third party and, in his words, stated "so it would be out of his possession forever." He also asserted that he wanted his three children to have the deed; and that he had delivered the keys to his wife to make doubly sure they would get it. Under the circumstances shown by this

record, Mildred Lucille Scott would have owed a right and duty not to surrender or return the keys to the grantor, and became the agent or trustee for the grantees. It is not any one of the above circumstances in itself which would be sufficient to constitute delivery of a deed under the adjudicated cases. But, considering the acts and words of decedent with reference to the delivery of the deed in question, we cannot disturb the judgment of the lower court in determining that this deed had been delivered by the grantor during his lifetime to a third party, his wife, Mildred Lucille Scott, to be placed of record after his death for and on behalf of the infant grantees therein named, Melvin F. Scott, Terry G. Scott and Mary Alice Scott, and that such deed is now in full force and effect. *Klingaman* v. *Burch, supra; Heavner* v. *Kading* (1930), 209 Ia. 1271, 228 N. W. 311; *Moore* v. *Trott* (1912), 162 Calif. 268, 122 Pac. 462.

Where a deed is delivered through the instrumentality of a third person, the title conveyed relates back to its execution completed by delivery to the grantee. *Kokomo Trust Co.* v. *Hiller* (1918), 67 Ind. App. 611, 116 N. E. 332; *St. Clair* v. *Marquell* (1903), 161 Ind. 56, 67 N. E. 693; *Stout* v. *Rayl* (1896), 146 Ind. 379, 45 N. E. 515; *Goodpaster* v. *Leathers* (1889), 123 Ind. 121, 23 N. E. 1090; *Newman* v. *Fidler* (1912), 177 Ind. 220, 97 N. E. 785; 26 C. J. S., Deeds, §46, p. 247.

The presumption is made stronger in favor of the delivery of deeds in cases of voluntary settlements than in ordinary cases of bargain and sale, and the fact that the grantees were minors and members of grantor's family is entitled to some consideration in construing the legal effect of the circum-

stances surrounding the execution and delivery of the deed in question. *Colee* v. *Colee et al.* (1889), 122 Ind. 109, 23 N. E. 687.

For the reasons given herein, the decision of the lower court was not contrary to law and the lower court did not err in overruling appellants' motion for a new trial.

Judgment affirmed.

NOTE.—Reported in 127 N. E. 2d 110.