SAMUEL C. WILEY, IMPL'D, ETC.,

v.

JAMES STEWART.

*Partnership Note—Whether Binding on Firm—Authority of Partner to Execute—Agency—Ratification—Delivery of Note—Evidence.*

1. A partnership is bound by a promissory note executed by a partner in the name of the firm, while acting within the scope of his authority as its general manager and financial agent.

2. An agent who is authorized to loan the money of his principal may loan it to a firm of which he is a member, the principal having the option to repudiate or ratify the transaction.

3. In an action on a partnership note, it is *held:* That appellant, a member of the firm, was chargeable with notice of the extent and character of the business carried on by the firm: that the partner who acted as its general manager and financial agent had authority to execute the note; that the agency of said partner for the payee. in making the loan represented by the note, did not affect the transaction, his principal having accepted it; that a manual delivery of the note to the payee was unnecessary; and that certain evidence touching the partnership agreement as to the authority of members of the firm to borrow money and execute notes, and certain other evidence, was properly excluded.

[Opinion filed June 9, 1887.]

Wiley v. Stewart.

Appeal from the Circuit Court of La Salle County; the Hon. Charles Blanchard, Judge, presiding.

This was a suit commenced by appellee against the firm of O. J. Wilson & Company, composed of appellant, O. J. and Wm. Wilson, on a promissory note purporting to be signed by said firm, payable to appellee, bearing date August 1, 1884, due March the 1st, 1885, for the sum of $800, drawing eight per cent. interest from date. The note was signed by Wm. Wilson, one of the members of the firm, in the firm name.

The defense interposed by the appellant Wiley was that William Wilson had no authority to sign the note in the firm name, not having, by the agreement of co-partnership, any right to borrow money or sign notes, and this defense was interposed by plea and affidavit. The verdict and judgment below was for appellee on the note for $906.66.

It appears that the note was given for borrowed money under the following circumstances, to wit: William Wilson was the general manager and conductor of the firm business of O. J. Wilson & Company, which was that of blacksmithing and repairing, and also to buy out an old stock of partly manufactured stuff, and when the hands were at leisure on the repairing and blacksmithing business, were to work on wagons, harrows and things of that kind that were necessary, and as claimed by appellee, but denied by appellant, a portion of the business, by the general mode of carrying on the business, was the general buying and selling of agricultural implements.

The appellant did not carry on the business in person, but occasionally took an active part in its management. It was not his general business to look after the business and attend to it. He had another business, the lumber business, some two blocks away. B. G. Barrett managed the business; he was to sell, fix prices for work done, sell wagons or buggies, and if material was needed, to purchase it, and to keep an account of the business. The proceeds of the business were deposited in the bank and were paid out through it. There was at the time, and had been in existence for eight or ten years, a banking firm in the same town of Earlville composed of the said

Wm. and O. J. Wilson, who were carrying on a general banking business, and said Wm. Wilson was also the general manager of the bank as well as the financial manager of the firm, and did all such business at the bank and kept all the books of the firm. In him the appellant placed unlimited confidence.

During this time, in the year 1884, the appellee had a general deposit account with the bank with power in Wm. Wilson to draw the money for appellee and loan it for him. On August 1, 1884, the appellee had a general balance in the bank to his credit of $984.29. William Wilson, acting under the general authority from appellee, withdrew $800 of that sum and loaned it to the firm of O. J. Wilson & Company, and charged the amount in appellee's account with the bank to the amount loaned, and gave credit in the books of the bank to O. J. Wilson & Company on their account with the bank for the amount borrowed, and also entered the amount on the firm books of O. J. Wilson & Company.

Appellee had a private package of papers in the bank belonging to him, and allowed Wm. Wilson to loan his money and place the notes in this package for appellee. The note in question was, on said August 1, 1884, signed by Wm. Wilson in the firm name of O. J. Wilson & Company, and placed in said private box for appellee.

The appellee knew nothing of this transaction till after the affairs of the bank went into the hands of the assignee. On the 19th day of December, 1884, the bank failed and made a voluntary assignment for the benefit of its creditors to Charles M. Smith, assignee, and on the 23d of December, 1884, the appellant filed a bill in chancery in the Circuit Court of La Salle County, praying for the dissolution of the firm of O. J. Wilson & Company, and the appointment of a receiver, and on the same day a receiver was appointed by the court.

About ten days after the failure the assignee showed the note to the appellee, this being the first he knew of its existence. The assignee having delivered the note to him he brought this suit.

Both the firm of Wm. Wilson & Company and O. J. Wilson

& Company are insolvent and the appellant is the only solvent member of either firm.

The partnership of O. J. Wilson & Company was entered into as testified to by O. J. Wilson, in August, 1879. Each member was to put in $500, and the $1,500 was thought to be enough at the time to carry on the business. The appellee swears in addition to the above, that $1,500 should constitute the capital of the company, and it was agreed that that would be all that would be necessary.

Messrs. Richolson & Gentleman, James W. Duncan and H. T. Gilbert, for appellant.

Messrs. Bull, Strawn & Ruger, for appellee.

Lacey J.    There can be little question that, according to the evidence admitted by the court to go to the jury, O. J. Wilson & Company, a firm composed of appellant and the two Wilsons, was a general trading firm, though when first organized, the scope of the business was perhaps not so extensive, it being created more especially for repairing, blacksmithing and manufacturing certain farm implements than for any other purpose, but the general business of buying and selling farming implements was added, and under such circumstances as that appellant should be held to notice of the extent of the business being carried on.    However, the business as originally agreed upon, contemplated the buying of material for manufacturing purposes, and in consequence the use of money and credit.    Wiley himself testifies that B. G. Barrett, as agent, was authorized to purchase material if needed.    If the agent might purchase on account of the firm, so might any of the members.

It was testified to by O. J. Wilson in regard to original articles of partnership that " the $1,500 at the time (the time the agreement was made) was thought to be enough to carry us on."

Appellant testified as to that part of the agreement that " in the agreement that we were to put in $500 each, and that

should constitute the capital of the company and it was agreed that that would be all that would be necessary." This was all the evidence admitted in regard to any restriction on the part of any member of the firm to execute the note of the firm or borrow money, if necessary, for any temporary purpose to facilitate the carrying on the business. It was a mere opinion at the time that $1,500 would be all the capital needed. Neither O. J. Wilson nor appellee was prohibited from testifying to the entire agreement of partnership, and we suppose they stated it all while testifying on that subject.

The appellant also stated in his bill in chancery filed asking for a receiver for the assets of the firm, which was sworn to, that " Wm. Wilson was the financial manager of the firm and did all such business at the bank and kept all the books of the firm and that he placed implicit confidence in him." William Wilson was the financial manager and had power, both by virtue of the articles of co-partnership as implied by law, and also by special appointment, to borrow money and execute the note of the firm therefor.

If, then, William Wilson was acting within the scope of his authority, as he unquestionably was, as partner, general manager and financial agent of the firm in executing the notes, his act was that of the firm and bound it. The other members of the firm would be held to notice of all his acts done in the scope of his authority and be bound in like manner with himself.

There was nothing in the relations between Wm. Wilson and his co-partners that, if known to appellee and he had perfected the loan himself with William Wilson, could have any legal effect to release the appellant from the obligations of the note.

The case stands the same as to each member of the co-partnership as it would have done with Wm. Wilson in case he had borrowed the money himself and given his individual note instead of that of the firm. They could occupy no more favorable position than he would himself under such circumstances.

Would the fact that Wm. Wilson was the agent of the appellee to make the loan of his money vitiate the contract of loan and the note? We think not, if the appellee saw proper,

when he ascertained that the note had been executed, to accept it. It was a matter optional with him, and O. J. Wilson & Company could not object.

In Story on Agency, Sec. 214, page 256, it is said on this subject: "The doctrine we have been considering is capable of a great variety of applications. But in all the cases it is founded on the same beneficial and enlightened policy, the protection of the principal and the advancement of his interests. Thus, for example, if an agent authorized to buy should buy of himself and the bargain is advantageous to the principal (as has been already hinted), the latter has his option to ratify it or not; if disadvantageous he may affirm it or repudiate it at his pleasure," etc.

The same doctrine is held in Cotton v. Halleday, 59 Ill. 176. So, in the case at bar, the same principle would govern. Wm. Wilson was authorized to loan the money of appellee and he loaned it to the firm of which he was a member, having authority to borrow. Of course Wm. Wilson, having an interest in the firm, being a member, would not be able to bind appellee to accept the loan and the firm note of O. J. Wilson & Company, but he might and did accept it.

It appears that the firm of O. J. Wilson & Company received the benefit of this $800 borrowed of appellee. It was entered to their credit on the bank books of Wm. Wilson & Company and paid so much of their indebtedness to the bank, which was some $26,312.75 after receiving credit for the $800. The money borrowed was taken from the account of the appellee and placed to the credit of O. J. Wilson & Company, and appellant swears he thinks the very loan appears on the books of O. J. Wilson & Company since they were copied from Wm. Wilson's books.

Wm. Wilson had the keeping of both sets of books, and was the financial agent, and as such drew overdrafts on the bank to the extent of thousands of dollars extending through August, September, October, November and December till the failure, charging O. J. Wilson & Company interest on monthly balances and at the time of the failure of the bank O. J. Wilson & Company were indebted to it for overdrafts to

the amount of $16,231.33. Having received the appellee's money and not offering to return it they should not be permitted to avoid the contract by means of which it was received

It is objected that the note was never delivered to the appellee by Wm. Wilson. We do not think this position tenable. The note was duly signed and put into the private box of appellee, kept at the bank for the reception of such paper, and all the credits and charges duly entered by Wm. Wilson, in the bank books, both in the account of O. J. Wilson & Company, and that of appellee. This shows a clear intention on the part of Wm. Wilson, appellee's agent, to deliver the note to him, and no manual delivery was necessary, nor did it make any difference that the note passed into the hands of the bank's assignee, before it was handed over to appellee. Williams v. Galt, 95 Ill. 172; Daniel on Negotiable Inst., Secs. 63, 64.

The further objection is made by counsel for appellant, that the court below refused the offer on his part to give in evidence certain proposed matters, the one the more particularly singled out in argument for objection, being as following :

" Defendant offered to show by the partnership agreement, that in no event was Mr. Wiley to pay in more than his one-third of the partnership capital, $1,500; that Wiley limited his investments to $500, and would not agree to be liable for any greater amount, and that it was distinctly understood that if, at any time, more than that amount was put in, it would be put in by William Wilson at his own personal risk as an individual member of the firm."

We do not think the court below erred in rejecting this offer. It was proposed to show that this was a part of the agreement of partnership. Without stopping to inquire what might have been the effect of such proposed evidence, even if it had proven what is claimed for it by appellant's counsel, that is, that if such had been the agreement, Wm. Wilson would, as between the members of the firm, have had no authority to borrow money to pay debts or to sign notes in the firm name under any circumstances, we will say that it falls far short of making out such proof. In the first place,

Wiley v. Stewart.

O. J. Wilson and appellant had already given in substance the words of the agreement and all of it as far as they saw proper to go, and the court was not compelled to allow the witnesses to repeat the evidence, and as had been shown what was testified to in the first instance, was not what was offered to be shown by appellant.

In the next place, the proposed addition to the agreement showed no express agreement that Wm. Wilson should not borrow money for temporary purposes, and give the firm's note for it. This might very easily be done without increasing the capital stock, nor was it necessary in case money was borrowed, to call on Wiley for more money to increase the capital stock, nor would it require Wm. Wilson to put in any money. The business might be run in such a way as that the original capital would have been ample.

Then the stipulation that appellant would not be liable for any more than $500 was void, as being contrary to the legal effect of the balance of the agreement and the law, and should be regarded as nugatory. If it could have any effect, it was only good on a settlement of the partnership matters as between the partners.

Wm. Wilson was put in charge of the finances of the concern, to manage it the best he could, unrestricted as to signing notes or borrowing money, and it was evidently the intention he should do so if he thought best, as implicit confidence was placed in him, only appellant was not to be called upon to put up any more money.

He must have known such an agreement was of no force. Evidently appellant trusted to Wilson's financial and business ability to save him harmless and to make a success of the business. In these anticipations he was disappointed and Wm. Wilson or somebody carried on the business in a reckless and ruinous manner, or some unexpected misfortune overtook them, so that in the end loss resulted to the members of the firm. While it is to be deplored, the law will not allow O. J. Wilson & Company to shift its losses on the shoulders of innocent parties. The other offers of proof by appellant, rejected by the court, and not argued by appellant's counsel, have been

looked into and the same objections applicable to the above are also applicable to those; besides it was in several of them proposed to prove by witnesses that appellant never gave Wm. Wilson authority to sign notes for the firm, which was a question of law arising from the nature of the agreement and could not be proven in that way. It might be witness' opinion but that would not govern.

We see no error committed by the court in the exclusion of such evidence. From what we have said it results that the court committed no error in giving instructions for appellee or in refusing those of appellant.

The verdict appears to be correct on the undisputed facts proven. It will not be necessary to further notice the error assigned on the giving or refusing instructions.

The judgment of the court below is affirmed.

*Judgment affirmed.*