The Trustees of the Danvers Literary and Library Association et al., Appellants, v. John F. Skaggs et al., Appellees.

Gen. No. 8,890.

126

Heard in this court at the January term, 1935. *Opinion filed April 12, 1935.

WAYNE C. TOWNLEY, J. OSCAR HALL and LOUIS L. WILLIAMS, all of Bloomington, for appellants.

MARTIN, HOOSE & DEPEW, of Bloomington, for appellees.

MR. JUSTICE DAVIS delivered the opinion of the court.

The original declaration in this case was filed in the circuit court of McLean county on September 15, 1932, by the plaintiffs, in which it was sought to recover from John F. Skaggs, Sarah E. Willerton, Esther Remus and Walter A. Yoder, administrator with the will annexed of the estate of Louis E. Skaggs, deceased, who are named defendants as administrator and devisees of the said Louis E. Skaggs, deceased, the amount due upon a certain note held by the plaintiffs and executed by said Louis E. Skaggs in his lifetime, the suit being based on sections 10, 11 and 12 of the Statute of Frauds and Perjuries (Cahill's Rev. St. 1933, ch. 59, ¶¶ 10, 11 and 12), which provide in substance that when any lands shall be devised and the personal estate of the devisor shall be insufficient to pay all demands against said estate, said devisees shall be liable to the creditors to the full amount of the lands devised to them.

After the death of one of the defendants named in the original declaration an amended declaration was filed by plaintiffs adding new parties defendant.

By their amended declaration plaintiffs stated a cause of action, based on sections 10, 11 and 12 of the Statute of Frauds and Perjuries, against the defendants as devisees of Louis E. Skaggs, deceased, for the recovery of the amount due on a promissory note executed by Louis E. Skaggs in his lifetime.

On February 22, 1934, all of the defendants except Walter A. Yoder, administrator with will annexed and Maurice Stern, administrator *de bonis non* with will annexed of the estate of Louis E. Skaggs, deceased, filed pleas or a joint answer to the declaration of plaintiffs, setting forth four defenses relied upon by them to defeat the action of the plaintiffs.

Plaintiffs treating the answer filed by the defendants as pleas to the declaration filed a demurrer to the fourth plea of the defendants by them pleaded to the amended declaration, which was overruled by the court on August 16, 1934, and thereupon the plaintiffs filed replications to said pleas of said defendants. .

The parties thereupon entered into a stipulation as to the facts and further stipulated that the issues joined should be submitted to the court for trial without the intervention of a jury, and on September 27, 1934, the cause was tried by the court. The judgment of the court was that the plaintiffs take nothing by this suit and that the defendants have execution against the plaintiffs for costs.

The errors relied upon by appellants for a reversal of said judgment are as follows:

1. That the court erred in overruling plaintiff's demurrer to the fourth paragraph of defendant's answer as amended.

2. The court erred in finding the issues for the defendants on the pleadings and on the stipulation of facts.

3. The court erred in rendering judgment for the defendants and against the plaintiffs in this action.

4. That the judgment of the court is not sustained by the facts as stipulated.

5. That the judgment of the court is against and contrary to the facts as stipulated.

In their argument appellants say that the questions to be decided are as to whether the lower court erred in overruling plaintiff's demurrer to the fourth paragraph of defendants' answer and as to whether the court erred in finding the issues for the defendants on the pleadings and stipulation of facts and in rendering judgment for the defendants.

Rule 1 of the Rules of Practice and Procedure adopted by the Supreme Court provides that except as provided by that rule, or by written stipulation of the parties or by order of court, proceedings instituted prior to January 1, 1934, shall not be governed by the Civil Practice Act. This suit having been instituted prior to January 1, 1934, and the declaration and all pleadings, except the answer of the defendants, having been in conformity to pleadings at common law, such cause is not governed by the Civil Practice Act.

The well recognized rule at common law is that when a person files a demurrer which is overruled and pleads, without standing by his demurrer, the demurrer is waived. The plaintiffs having filed a replication to the plea of the defendants cannot now assign as error the action of the court in overruling such demurrer.

The issues raised by the first and second pleas of the defendants and the replications of the plaintiffs thereto, are as to whether the note in question was ever delivered by Louis E. Skaggs in his lifetime or accepted by plaintiffs.

Defendants contend the evidence fails to establish that the note in question was ever delivered by Louis

E. Skaggs or accepted by the plaintiffs. The plaintiffs say that it is stipulated that the decedent did "make and execute" the note in question; that a note is not executed until it is delivered, and that the stipulation that the note was executed is equivalent to a stipulation that it was delivered.

A note takes effect from the time of its delivery, and until it is delivered a note is not executed. Defendants failed to file any affidavit or verified plea denying the execution of the note in accordance with the provisions of section 52 of the Practice Act of 1907.

No question having been raised by the plaintiffs, in the circuit court, as to the sufficiency of the plea of defendants denying the delivery of the note sued upon, and plaintiffs having replied thereto, and that issue having been submitted to the court for trial, plaintiffs cannot now be heard to say that because it was stipulated that the decedent did "make and execute" the note such stipulation amounted to a waiver of the plea denying the delivery of the same filed by defendants.

From the stipulation it appears that the note, after the same was signed by Louis E. Skaggs, remained in his possession during his lifetime, and the question of delivery and acceptance must be determined from the facts as stipulated by the parties.

There may be a valid delivery by the maker and an acceptance by the payee of a note, even though the maker retains possession of the same, when the evidence in the record shows that the note was held by the maker as agent of the payee, by the placing of said note among the papers of the payee of which the maker may have possession as agent, with the intention of delivering the note to such payee, and in such case no manual delivery is necessary.

From the evidence there can be no doubt as to the intention of Louis E. Skaggs. After having made the

note he placed the same among the records and papers of the Danvers Literary and Library Association, of which he was treasurer, and in whose custody and possession all of the records, notes, moneys and papers of said association were kept, and not only did he place said note in question among the records and files of said association but he also paid the interest that accrued on said note the first year and indorsed the payment thereof on the back of said note and credited the amount of said interest on the books of the association.

All of the books and papers of said association of which he was the custodian by virtue of his office as treasurer were kept by him in his home, and upon his death were turned over to said Danvers Literary and Library Association by the administrator of his estate, including the note in question, and the fact that such note was among the books and papers and property of the association would, when considered with the other evidence in the case, be sufficient to establish the delivery of the note by Louis E. Skaggs in his lifetime and the acceptance thereof by the plaintiff.

In the case of *Williams v. Galt,* 95 Ill. 172, the only question for determination by the court was whether the plaintiff had title to the note in controversy at the time he commenced his suit. The suit was brought by Robert A. Galt against Taylor Williams on a note payable to Patterson & Co., and by them indorsed and delivered to the plaintiff on January 16, 1878, and was placed in an envelope that contained other papers that belonged to the plaintiff, and at the same time they credited their account of bills receivable and charged the account of the plaintiff. On the next day the firm of Patterson & Co. made a voluntary assignment for the benefit of creditors. The note was not included in the schedules of property delivered to the assignee, but whether it was in fact delivered to the plaintiff

other than by being placed with his private papers on special deposit for safe-keeping in the bank before the assignee received the key of the banking house containing the effects of assignors is not definitely proved. The court said: "If the assignment made on the 17th day of January affected the note at all, it was the equitable ownership and not the legal title to it. That passed, by the indorsement of the payees to plaintiff, and it is no concern of the maker who may be the equitable owner of the proceeds of the note. But under the evidence it is apparent plaintiff is both the legal and the equitable owner of the note, and may rightfully maintain an action to enforce collection."

In the case of *Wiley v. Stewart*, 23 Ill. App. 236, James Stewart sued the firm of O. J. Wilson & Company on a note purporting to be signed by said firm. The firm was composed of O. J. and Wm. Wilson and appellant, Samuel C. Wiley, who were carrying on a general trading business. Wm. Wilson and O. J. Wilson were also carrying on a general banking business and Wm. Wilson was general manager of the bank. James Stewart, appellee, had a general deposit account with the bank with power in Wm. Wilson to draw money for appellee and loan it for him.

Wm. Wilson withdrew $800 and loaned it to O. J. Wilson & Company, of which he was one of the partners, and charged the amount to appellee's account with the bank and gave credit on the books to O. J. Wilson & Company on their account. Appellee Stewart had a private package of papers in the bank belonging to him and allowed Wm. Wilson to loan his money and place the notes in this package for appellee. The note in question was signed by Wm. Wilson in the firm name of O. J. Wilson & Company, on August 1, 1884, and placed in said private box for appellee. Appellee knew nothing of the transaction

until after the bank went into the hands of an assignee on December 19, 1884.

It was contended that the note was never delivered by Wm. Wilson to appellee. The court said: "We do not think this position tenable. The note was duly signed and put in the private box of appellee, kept at the bank for the reception of such paper, and all the credits and charges duly entered by Wm. Wilson in the bank books, both in the account of O. J. Wilson & Company and that of appellee. This shows a clear intention on the part of Wm. Wilson, appellee's agent, to deliver the note to him and no manual delivery was necessary, nor did it make any difference that the note passed into the hands of the bank's assignee before it was handed over to appellee.'' This opinion of the Appellate Court was expressly approved by our Supreme Court in this same case. *Wiley v. Stewart,* 122 Ill. 545–551.

An action similar to the one at issue was passed upon by the Appellate Court of Indiana in the case of *Indiana Trust Co. v. Byram,* 36 Ind. App. 6, 72 N. E. 670, in which case a transfer to the Supreme Court was denied.

A claim was filed against the estate of Norman S. Byram, deceased, by Sophronia A. Byram, appellee, upon which she recovered judgment and the Indiana Trust Co., as executor, appealed. From 1878 to the time of his death the decedent was agent of appellee, who was his cousin, and loaned and reloaned, invested and reinvested her money in the purchase of stocks, bonds, notes and other securities, retaining them in his exclusive possession and acting without pay and rendering an annual statement about January 1st each year, except that he rendered none for January 1, 1902, in the early part of which year he died.

He kept the papers and securities in his private safe in his office in a paper box, on which was written S.

A. Byram. During his last illness he directed that the box be brought to his home, and after his death it was found in a locked bureau drawer. It contained the note for which the claim was filed, and upon which judgment was obtained. The box also contained notes, stocks and bonds belonging to appellee. The note in question had indorsements of payments written upon the back thereof in the handwriting of the decedent. The statements rendered appellee did not make any reference to the note sued upon. It was held that the inference of delivery necessarily arose from the facts in the case.

It is stated in the opinion that absolute retention of control over the instrument by the maker is inconsistent with the intention to deliver, but that cases of this class are distinguishable from the one at bar in that the maker of the note sued upon was the agent of the payee expressly authorized to take and hold the paper for her.

In answer to the contention that an agent cannot act as such when his personal interest is or may be antagonistic to that of his principal and therefore decedent could not deliver his note to himself, as agent of appellee, the court said: "The rule invoked is a wise and salutary one. It is designed to guard against the abuse of fiduciary duty, and all such transactions are void 'as respects the principal unless ratified by him with a full knowledge of all the circumstances.'"

The court further said: "The doctrine asserted would be applicable were the agent attempting to compel his principal to take his note in the final settlement of their affairs, instead of the money with which he had been intrusted. It is not applicable where the principal elects to enforce the note made by the agent as in the case at bar." The judgment of the lower court was affirmed.

We are of opinion that under the facts in this case the note was delivered by the maker and accepted by the plaintiffs.

Appellees in the last paragraph of their fourth plea or answer to the declaration of the plaintiffs contend that plaintiffs are barred because they failed to file their claim within one year from the granting of letters of administration as provided for in section 70 of the Administration Act, Cahill's St. ch. 3, ¶ 71. It has been held in numerous cases that the heirs and devisees of a deceased person in such actions as this cannot avail themselves of this statute. This act can only be interposed by an executor or an administrator.

By their third plea appellees interposed the five-year statute of limitations. There is no merit in this contention of appellees. This action was brought under sections 10, 11 and 12 of the Statute of Frauds and Perjuries, Cahill's St. ch. 59, ¶¶ 10–12, and the general statute of limitations alone applies to such actions. *Straus Brothers Co. v. Rush,* 241 Ill. App. 216; *Union Trust Co. v. Shoemaker,* 258 Ill. 564; *Durflinger v. Arnold,* 329 Ill. 93, 99; *First Nat. Bank of Hinckley v. Clark,* 275 Ill. App. 282.

In *Ryan v. Jones,* 15 Ill. 1, Ryan brought an action in debt under the Statute of Frauds and Perjuries against John C. Jones, as executor and devisee of Michael Jones, upon certain promissory notes made by said Michael Jones in his lifetime. The Supreme Court held: "In joint actions under the statute, the executor or administrator may insist upon this limitation of two years; and if he does so successfully, the plaintiff must take judgment against him to be satisfied out of newly discovered estate. But heirs and devisees cannot rely upon this limitation. They may insist upon the general statute of limitations; and, if successful, may wholly defeat a recovery against them." An action may be commenced upon a prom-

issory note at any time within 10 years next after the cause of action accrues.

There being no statutory period of limitation within which the lien which creditors have upon the real estate of their deceased debtors for the satisfaction of their debts, and which they may enforce through administration, our courts, in analogy to our statutes of limitations relating to the liens of judgments, have adopted the period of seven years as a time within which application should be made. This does not apply to actions based upon sections 10, 11 and 12 of the Statute of Frauds and Perjuries, and the plaintiffs in such actions have no lien upon the real estate which descended to the heirs or devisees.

Appellees say that the record may be searched from beginning to end and it cannot be shown that the decedent, Louis E. Skaggs, ever received any money for the note in question. Under the provisions of our statute any negotiable instrument is deemed prima facie to have been issued for a valuable consideration. And when a plaintiff produces a note payable to the order of himself and the same is admitted in evidence, it makes a prima facie case for him. If the defendant wishes to interpose the defense of a failure or want of consideration it must be pleaded specially, and no such plea was interposed by the defendants in this case and that question is not before us for consideration.

A good cause of action is stated in plaintiffs' declaration. It is alleged that Louis E. Skaggs, on March 1, 1927, executed his note calling for the sum of $650 in five years payable to the order of the plaintiffs; that he departed this life on September 13, 1929, testate; that Walter A. Yoder was appointed administrator with the will annexed of his estate on October 21, 1929; that said Louis E. Skaggs at the time of his death was the owner of personal property and of real estate which was described in the declaration;

that he did not have sufficient personal property to pay the claims filed against his estate; that said real estate has been taken and possessed and is now being held by the defendants as heirs and devisees of said Louis E. Skaggs, deceased, and is of the value of $10,000; and that said indebtedness has not been paid, and that by force of the statute said heirs and devisees are liable to pay plaintiffs said money. Ch. 59, ¶ 12, Cahill's St. 1933.

This same section 12 also provides that when any heir or devisee shall be liable to pay debts of his executor or devisor in regard to any lands descending or being devised to him and shall sell or alien the same before action brought or process sued out against him, such heir or devisee shall be answerable for such debt to the value of the land sold by him, aliened or made over, and execution may be taken out upon any judgment so obtained against any such heir or devisee to the value of said land as if the same were his own proper debt, saving and excepting that land by him bona fide aliened, before the action brought, shall not be liable to such execution.

Section 13 of said act provides: When any action is brought against any heir or devisee he may plead *riens per descent* at the time of the commencement of the action and plaintiffs may reply that he had lands from his ancestor or devisor before commencement of the action, and if upon issue joined it be found for the plaintiff, the jury shall inquire of the value of the lands so descended or devised and judgment shall be given and execution awarded as aforesaid.

In order to avoid the provisions of said statute the defendants by their fourth plea allege that they were not possessed of certain of the real estate described in the declaration and that the same had been conveyed prior to the commencement of said suit, and that the administrator filed an inventory of said estate includ-

ing the lands described in the declaration and that within one year after letters issued claims amounting to $7,267.52 were filed and that the personal estate was not of sufficient value to pay said claims; that before the expiration of the year defendants sold said real estate to Henry Oldham for $25,350 and turned the money over to said administrator to be used in the payment of all debts against said estate, and that all the debts were paid and the balance of said money was paid over to the defendants, Sarah E. Willerton, deceased, and John S. Skaggs, as their distributive shares, and that the amount distributed was more than sufficient to pay plaintiffs' claim in full; that plaintiffs filed claims against said estate which were paid in full; that the note sued on was turned over to plaintiffs by said administrator shortly after he took over his duty as such administrator, and that plaintiffs with full knowledge of all the facts did not present such claim for allowance nor commence any proceeding until this suit was instituted, and that it was the duty of the plaintiffs to have filed said claim within a year after letters were granted in said estate, and because of their failure so to do there has been sufficient laches to bar this action.

As to such fourth plea plaintiffs replied that they did not file a claim against said estate and that there was not sufficient personal property inventoried or possessed by said Louis E. Skaggs at the time of his death to pay the claims filed against said estate and to pay their claim; that it is not alleged in said plea that plaintiffs had any knowledge or notice of such contract with said Henry Oldham and the payment of said money to said administrator.

At common law, if the heir had aliened the land which he had by descent before the action was brought, the creditor had no remedy against him and he could plead *riens per descent* when the suit was commenced,

which was a perfect defense. *Monroe v. Becker*, 283 Ill. 42. However, under the provisions of the Statute of Frauds and Perjuries above referred to, when an heir or devisee sells land before the action brought, he shall be answerable for such debt to the value of the land so aliened by him.

The defendants pleaded *riens per descent* at the time of the commencement of the action, which would have required plaintiffs to have replied, that defendants had lands from their ancestor or devisor before the commencement of the action, had the defendants not further alleged in said plea that they sold said lands and turned the money over to the administrator for the payment of the debts against said estate, and that after the payment of the debts the balance of said money was paid over to Sarah E. Willerton and John F. Skaggs as their distributive shares.

Plaintiffs were not guilty of laches under the facts and circumstances alleged in the fourth plea of defendants by failing to sooner assert their rights by the institution of some action to recover upon the note sued upon.

Mere delay will not constitute laches, but the delay must be such as to work to the disadvantage of the other party. *Lutyens v. Ahlrich*, 308 Ill. 11. Under the facts in this case plaintiffs could commence their action at any time before the same was barred by the statute of limitations, and something more than mere delay to bring suit is necessary to constitute such laches as will bar them of their remedy. There must be some act done or allowed, some change of relations or conditions, which makes it inequitable to enforce the legal right. *Lynn v. Worthington*, 266 Ill. 414. Even though the defendants may have sold the lands mentioned in their plea and have given the money realized from the sale of the lands to the administrator of said estate with which to pay the claims allowed

against said estate, and even though all claims were paid and the balance of the money was paid over to Sarah E. Willerton, now deceased, and John F. Skaggs, as their distributive share, and said sum was more than sufficient to pay the claim sued on, plaintiffs were not required to file their claim against said estate within one year from the time letter of administration was granted, but had a right to rely upon the cause of action given them by the Statute of Frauds and Perjuries, the personal property of the said Louis E. Skaggs being insufficient to discharge the just demands against his estate. Said money so placed in the hands of the administrator by the defendants, received by them from the sale of said lands, not being assets in the hands of said administrator for the payment of debts within the meaning of par. 111 of chapter 3, Cahill's St. 1933, as contended for by defendants.

No part of the money turned over to said Yoder as administrator, nor the contract with said Oldham, was inventoried by said administrator as assets of said estate, and plaintiffs had no knowledge of said contract with Henry Oldham for the sale of said real estate, nor of the terms thereof, until after the expiration of one year from the time the letters of administration were issued to said Walter A. Yoder as such administrator and neither the plaintiffs nor said Walter A. Yoder were parties to said contract.

Defendants because of such delay by plaintiffs in causing an action to be instituted for the collection of the amount due on said note, so far as the record discloses, are at no more of a disadvantage than they would have been had a claim been filed in said estate within one year from the granting of letters, and no change of conditions has taken place that makes it inequitable for plaintiffs to enforce their legal rights. Plaintiffs had no lien against the lands devised to said defendants that would prevent the sale of the same by defendants, and they were at liberty to sell and

dispose of the same or make use of it as fully and freely as if plaintiffs had no cause of action against them. There was delay only, on the part of plaintiffs, and in such case the statute is the only limitation of the right to sue. *Lynn v. Worthington, supra.*

The matters alleged by the defendants in their fourth plea would not bar plaintiffs' cause of action. It would, however, bar plaintiffs from recovering a personal judgment against such of said defendants as sold lands devised to them and described in said plea, as to so much of the purchase price received by them as was actually used in the payment of the debts of said Louis E. Skaggs, but not as to any surplus over and above such amount.

It is alleged in the declaration and not denied by the defendants by any plea filed by them that they took and now possess lands other than those described in their said fourth plea and which are now held by them as heirs and devisees of said Louis E. Skaggs, deceased, it being also stipulated by the parties to this suit that the defendants are now the owners of and in possession of all the lands described in the declaration, except that part conveyed to Henry Oldham, and that the defendant, Esther Remus, is the owner of said Lots 13 and 14, in Block 1 in Second Addition to the Village of Danvers.

We are of opinion that the circuit court of McLean county erred in holding that plaintiffs were barred because they failed to file their claim within one year from the date of the granting of letters in the estate of Louis E. Skaggs, deceased, and because of laches in not sooner instituting suit to recover the amount due on said note involved in this litigation, and in entering judgment in bar against plaintiffs.

The judgment of the circuit court of McLean county is reversed and said cause of action remanded for a new trial.

*Reversed and remanded.*